# W. B. HAYS v. CITY OF POPLAR BLUFF et al., Appellants.

### In Banc, February 9, 1915.

1. **CITY: Powers.** Municipal corporations possess no powers or faculties not conferred upon them, either expressly or by fair implication, by the law which creates them, or by other statutes applicable to them.

2. **———: ———: Special Privileges.** Since the Constitution forbids the passage by the General Assembly of any local or special law granting to any person any special right, privilege or immunity, the General Assembly cannot give to a city the power to pass an ordinance of that character.

3. **———: ———: ———: Fire Limits: Arbitrary Exceptions.** Where the statute declares that "the council may provide, by ordinances, limits within which no building shall be constructed except of brick or stone or other incombustible materials, with fireproof roofs, and impose a penalty for violation of such ordinance, and may cause buildings commenced, put up or removed into such limits, in violation of such ordinance, to be removed," the city has power to enact an ordinance prohibiting the construction of *any* building of combustible material within defined limits, but it has no power to enact one declaring no such building shall be constructed without "special permission of the mayor and city council" and that such permission is not

to be granted unless the application therefor is "accompanied by the written consent of all persons owning property within the block in which such proposed building is to be erected or placed." The statute lays down a rule applicable to all alike; the ordinance makes an arbitrary classification. [Disapproving St. Louis v. Fischer, 167 Mo. 654.]

4. ———: ———: ———: ———: **Distinction Among Citizens.** When a city by ordinance seeks to restrict for the public good the rights of the individual otherwise incident to the ownership of property, it must do so by a rule applicable to all alike under the same circumstances, and cannot make his enjoyment of his own depend upon the arbitrary will or caprice of the council.

5. ———: ———: ———: ———: **Delegation of Power.** An ordinance declaring that wooden or combustible buildings shall not be constructed within certain limits without the "special permission of the mayor and council" and that such permission is not to be granted unless the application therefor is "accompanied by the written consent of all persons owning property within the block in which such proposed building is to be erected or placed," is void, because it amounts to a delegation of the legislative power to such property owners.

6. **INJUNCTION: Enforcement of Invalid Police Regulation.** One of the most common uses of the writ of injunction is to prevent injury to or destruction of property by the unauthorized or wrongful exercise of police powers by municipal corporations. It is available to a property owner to prohibit a city from removing his wooden building erected within the limits prescribed by an invalid ordinance specifying the terms upon which such a building might be erected therein.

Appeal from Wayne Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*N. C. Whaley* for appellants; *Abington & Phillips* and *David W. Hill* of counsel.

(1)   Even though this court may believe and hold that while section 9228 confers authority upon cities of the third class to enact an ordinance prescribing fire limits and absolutely prohibiting the erection of inflam-

mable buildings therein, but that said section confers no authority upon such cities to regulate the construction of buildings therein, still the ordinance in question is not invalid and should not be declared void, for the reason that the portion of the ordinance providing for the regulation of buildings in the fire limits by the city council can be eliminated from the ordinance and there will still remain a valid and enforceable ordinance absolutely prohibiting the erection of an undesirable building within the fire limits, viz: the part of section 314 relating to erection reading: "Without obtaining special permission from the mayor and city council." And the attempt of the court in its opinion heretofore filed herein to hold that because a part of the ordinance was invalid that the remainder is invalid notwithstanding that the part remaining might constitute a valid and enforceable ordinance, is contrary to the following decisions, to-wit: State ex rel. v. St. Louis, 241 Mo. 247; Board of Commissioners v. Peter, 253 Mo. 530; Simpson v. Iron Works Co., 249 Mo. 396; State ex rel. v. Gordon, 236 Mo. 170; State ex rel. v. St. Louis, 241 Mo. 231; Ex parte Loving, 178 Mo. 203; State ex rel. v. Warner, 197 Mo. 656; State ex rel. v. McIntosh, 205 Mo. 602; State ex rel. v. Taylor, 224 Mo. 474; State v. Clark, 54 Mo. 17; State ex rel. v. Field, 119 Mo. 593; Ensworth v. Curd, 68 Mo. 282; State v. Bockstuck, 136 Mo. 335; State ex inf. v Washburn, 167 Mo. 680; State ex rel. v. Wright, 251 Mo. 336; St. Louis v. Klausmeir, 213 Mo. 130; St. Louis v. Wortman, 213 Mo. 131; Rockville v. Merchant, 60 Mo. App. 365; Lamar v. Weidman, 57 Mo. App. 507; Birmingham v. Railroad, 98 Ala. 134; Ex parte Florence, 78 Ala. 419; Ft. Smith v. Scruggs, 70 Ark. 549, 91 Am. St. 100, 58 L. R. A. 921; Rau v. Little Rock, 34 Ark. 303; Ex parte Christensen, 85 Cal. 208; Canova v. Williams, 41 Fla. 509; Augusta v. Clark, 124 Ga. 254; Railroad v. People, 161 Ill. 244; Indianapolis v. Bieler, 138

Ind. 30; McNulty v. Toof, 116 Ky. 202; State v. Robb, 100 Me. 180; Detroit v. Railroad, 95 Mich. 456, 21 L. R. A. 721, 35 Am. St. 578; People v. Armstrong, 73 Mich. 288, 16 Am. St. 578, 2 L. R. A. 721; State v. Mc-Farland, 96 Minn. 482; Wykoff v. Healey, 57 Minn. 14; Duluth v. Krupp, 46 Minn. 435; St. Louis v. Liessing, 190 Mo. 464, 109 Am. St. 774, 1 L. R. A. (N. S.) 718; Brizzolara v. Ft. Smith, 87 Ark. 85; Webster v. Ferguson, 95 Ark. 575; Campbell v. Thomasville, 6 Ga. App. 212; Clark v. Fitzgerald, 7 Ga. App. 437; People v. Mohr, 252 Ill. 160; Exp. Co. v. Chicago, 135 Ill. App. 268; Macomb v. Jones, 158 Ill. App. 271; Rossberg v. State, 111 Md. 394; Gist v. Constr. Co., 224 Mo. 369; Zimmer v. Stuart, 88 Neb. 530; Borough v. Tel. Co., 26 Pa. Sup. Ct. 346; Greenville v. Pridmore, 86 S. C. 442; Salt Lake City v. Christensen, 34 Utah 38, 17 L. R. A. (N. S.) 898; So. Pac. Co. v. Portland, 227 U. S. 559. (2) The opinion of the commissioner should not be adopted by this court for the further reason that to do so would result in the overruling of the case of St. Louis v. Fischer, 167 Mo. 654, rendered at the October term, 1901, by Court In Banc. This case of St. Louis v. Fischer was carried to the Supreme Court of the United States of America, where it was argued on April 12, 1904, and decided May 16, 1904, by an opinion written by Mr. Justice Brown, in which the decision of the Supreme Court of Missouri was in all things affirmed and the constitutional issues raised by Mr. Commissioner Brown in his opinion in this cause, decided adversely to his ruling. St. Louis v. Fischer has been published in many of the reports of the various States of the United States, and cited as an authority. It is found reported in the 99 Am. St. Rep. 614; it is cited approvingly in St. Louis v. Galt, 179 Mo. l. c. 19, also in Myer v. City, 180 Mo. 409; City v. Leasing, 190 Mo. 480; City v. Dairy Company, 190 Mo. l. c. 504, and also in Construction

Company v. Shovel Company, 211 Mo. 533, 63 L. R. A. 782, 1 L. R. A. (N. S.) 939, 1 L. R. A. (N. S.) 921, and 9 L. R. A. (N. S.) 660, foot note. We believe the court should have great hesitancy in overruling and repudiating a decision rendered by the Court In Banc, cited and published over the United States as the law of Missouri, and a decision that has been appealed to, and in all things affirmed by, the highest tribunal in the United States Government.

*N. A. Mozley, Leslie C. Green* and *Ernest A. Green* for respondent.

(1) It takes only a mere glance at section 9228, R. S. 1909, and at the ordinances of Poplar Bluff to see that in the enactment of its ordinances the city has not followed its charter powers. The charter granted to the city the right to pass a prohibitive ordinance with reference to the erection of buildings within the fire limits, but said city has not seen fit to exercise its charter powers in that respect, and instead of passing a prohibitive ordinance passed only a regulative ordinance, which regulations are void. 28 Cyc. 736. Numerous cases are cited in Cyc. to support the doctrine announced therein. (2) The appellants next contend that even though the ordinances in question were void, because of the fact that they did not follow the charter powers of the city, but on the contrary were merely ordinances of regulation, that still the ordinances should not be declared void for the reason that the valid part of the ordinances could be separated from the invalid and there would still be left a valid and enforcible ordinance, prohibiting the erection of combustible buildings within the fire limits. This contention made in appellants' brief is fully answered by the decisions. Kirkwood v. Meramec Highlands, 94 Mo. App. 645; State v. Railroad, 162 S. W. 145; County Court v.

Griswold, 58 Mo. 199; St. Louis v. Railroad, 89 Mo. 44; State v. Newell, 140 Mo. 282. (3) The greater portion, however, of the appellant's reply brief is devoted to the argument that the opinion of Commissioner BROWN should not be adopted by this court, for the reason that to do so would result in the overruling of the case of St. Louis v. Fischer, 167 Mo. 654. That case deals with only one phase of the invalidity of the ordinances in question. The opinion of the learned commissioner declared these ordinances void for three separate and distinct reasons, as hereinbefore pointed out; and the opinion in the case of City of St. Louis v. Fischer has reference to one of these three phases. In other words, the commissioner declared the ordinances in question void in this case, because of the fact that, first, the ordinance was not in conformity with the charter powers; that is, instead of being a prohibitive ordinance, it was an ordinance of regulation; secondly, the opinion of the commissioner declared the ordinance void because of the fact that it delegated to the property owners in the block the legislative power of determining who should, or should not, construct buildings of combustible materials; and, third, it declared the ordinance void because the ordinance vested in the city council and mayor the arbitrary power of accepting one person's application and rejecting the application of another person, with the same character of petition, and desiring to construct the same character of building. St. Louis v. Fischer has no application to the case at bar, except as affecting the last phase above mentioned on which the ordinance in question was declared void. We submit that the opinion in that case is in conflict with the great weight of authority, and should be overruled. The following cases are in irreconcilable conflict with it: State v. Dubarry, 44 La. Ann. 1117; State v. Tenant, 15 L. R. A. 423; State v. Whitnell, 78 Neb. 33, 126

Am. St. 586; Boyd v. Frankfort, 117 Ky. 199, 111 Am. St. 240; State v. Mahner, 43 La. Ann. 496; Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239; Sioux Falls v. Kirby, 6 S. D. 62, 25 L. R. A. 621; St. Louis v. Russell, 116 Mo. 248; Ex parte Sing Lee, 96 Cal. 354, 31 Am. St. 218, 24 L. R. A. 195; Yick Wo v. Hopkins, 118 U. S. 356. In the closing portion of the opinion of Mr. Justice Brown, in St. Louis v. Fischer, 194 U. S. 372, the court expressly recognizes the fact that legislative power of determining whether or not a building such as the one in controversy can, or cannot, be constructed, cannot under any circumstances be delegated to adjoining lot owners; and the Supreme Court of the United States, to support its decision in that particular, cites with approval the case of St. Louis v. Russell, 116 Mo. 248; which decision the respondent primarily relies upon to support his contention that the ordinance in question in this case is invalid. We insist that the ordinances in question in this case are absolutely void for all three reasons hereinbefore enumerated; and that that fact is fully determined by the case of St. Louis v. Russell, 116 Mo. 248; which case is the controlling authority on almost all fours with the case at bar. The doctrine of the Russell case hereinbefore cited has been approved from the time of the rendition of that opinion until the present. The same case is reported in the 20 L. R. A. 721, and abundantly collaborated with notes from other jurisdictions. The case is cited with approval in 199 Mo. 151, 154 Mo. 498, 145 Mo. 501, 136 Mo. 288, 119 Mo. 47, 147 Mo. App. 514, 132 Mo. App. 33, 130 Mo. App. 93, 128 Mo. App. 241, 95 Mo. App. 158, 73 Mo. App. 547, 64 Mo. App. 433, 244 Mo. 479. It is also cited in the 126 Am. St. 914, 126 Am. St. 591, 126 Am. St. 590, 108 Am. St. 788, 107 Am. St. 240, 99 Am. St. 624, 53 Am. St. 330. It has also been cited profusely in the Lawyers' Reports Annotated.

BROWN, C.—The petition was filed in the circuit court for Butler county, March 26, 1910, impleading with the city, as defendant, George Luther, its street commissioner. It states that on April 27, 1908, the defendant city, by its city council, granted plaintiff permission to erect a building of wood and iron on the west half of lot sixty-one in said city, of which he was seized as owner. That on the 20th day of September, 1909, the mayor and council granted him the further permission to construct on said building, which had then been erected, an iron roof, which he constructed in accordance with such permission. The plaintiff's right to erect and maintain the building under the ordinances pleaded, as well as the acquiescence of the city therein and its continued and present use for business purposes by plaintiff and his tenants, are fully and particularly set forth, and the petition proceeds as follows:

"Plaintiff, however, states that notwithstanding all of the matters hereinbefore pleaded and set forth, the said city of Poplar Bluff, by and through its duly elected, qualified and acting mayor and city council, on the 21st day of February, 1910, caused to be passed and enacted, the following ordinance, to-wit:

" 'ORDINANCE NO. 240.   BILL NO. 264.

" 'An ordinance declaring the building located on the west half of lot 61 of the original town (now city) of Poplar Bluff, Missouri, to be a nuisance and ordering its abatement and removal.

" '*Be it ordained by the City Council of the city of Poplar Bluff, Missouri, as follows*:

" 'Section 1.   That the building located on the west half of lot 61 of the original town (now city) of Poplar Bluff, in Butler county, Missouri, be and the same is hereby condemned and ordered abated and removed within ninety days after the service of notice of the passage of this ordinance on the owner, or agent, in charge of said building, for the reason that said building is constructed of combustible material and therefore a nuisance, and was built in violation of sections 313, 314 and 315 of the Revised Ordinances of the city of Poplar Bluff, of the revision of 1898, and ordinance No. 24.

" 'Section 2.  That if said building shall not be abated and removed within the time provided in this ordinance the street commissioner of the city of Poplar Bluff is hereby ordered and directed to abate and remove said building, after the lapse of the time provided in this ordinance.

" 'Section 3.  That the owners, or agent in charge of said building, failing to abate and remove said building within the time specified by this ordinance, after notice herein provided for, shall be deemed guilty of a misdemeanor and shall be fined not less than five dollars nor more than one hundred dollars for each offense.' "

It then alleges with particularity that the ordinance is void for lack of power under the city charter to pass it; because the city is estopped to deny the plaintiff's right to maintain the building; because it is in violation of that provision of section 10, article 1 of the Constitution of the United States, which forbids the States to pass any *ex post facto* law, or law impairing the obligation of contracts; also of the 5th and 14th amendments to the Constitution of the United States; and of sections 15, 20, 21 and 30, of article 2, and section 53 of article 4, of the Constitution of the State of Missouri.  That the building is not constructed of combustible material, nor is it a nuisance as stated in the ordinance quoted, but, although the ordinance is void, the city and defendant Luther, its street commissioner, are threatening and preparing, under its provisions, to not only tear down and destroy said building, but to arrest and prosecute plaintiff under the provisions of the third section thereof, all to his irreparable damage and injury, for which he has no adequate remedy at law.  That the building is worth ten thousand dollars, and is occupied by tenants of plaintiff engaged therein in lawful and proper lines of business.  The prayer is as follows:

"Wherefore, plaintiff prays that a writ of injunction issue from this court enjoining and restraining said city of Poplar Bluff and its co-defendant, George Luther, the duly appointed, qualified and acting street

commissioner of said city, and all other officers, agents and employees of said city from further proceedings to enforce the provisions of said ordinance No. 240 hereinbefore set forth, and from abating, tearing down, removing or destroying plaintiff's building hereinbefore described, and from trespassing upon or in anywise interfering with plaintiff's enjoyment of his said premises, and from interfering in any manner with the possession or title of plaintiff of, in or to said lot and tract of land and the building situate thereon, and for such other and further relief as to the court shall seem meet and just.''

A preliminary restraining order was granted, and the cause progressed so that on November 3rd the defendants filed an amended answer denying each and every allegation not therein expressly admitted and stating that defendant city is a city of the third class, and as such on March 6, 1899, passed a revision of its ordinances containing the following sections also set out in the petition:

"Section 313. All that part of the city of Poplar Bluff comprised within the following described boundaries shall be known as the fire limits of said city: Beginning at the northeast corner of lot 21, in the city of Poplar Bluff, Missouri, running thence west with the south boundary line of Oak street to Fifth street; thence south along the east boundary line of Fifth street to Ash street; thence east along the north boundary line of Ash street to the main line of the St. Louis, Iron Mountain & Southern railroad; thence northeasterly with the St. Louis, Iron Mountain & Southern railroad to the western line of Water street; thence north along the west line of Water street to the northeast corner of lot 21, to the place of beginning.

"Section 314. Hereafter it shall be unlawful for any person, without obtaining a special permission from the mayor and city council, to construct, build or place, or cause to be constructed, built or placed, any edifice, building, structure or shed, the outer walls of which are in whole or in part made of wood, in that part of the city embraced within the fire limits, as described in the preceding section.

"Section 315. Whenever any person or persons shall desire to construct, build or place any wooden building within the fire limits of the city of Poplar Bluff as hereinbefore described,

such person or persons shall file with the mayor and council an application in writing, setting forth the location, size and manner of construction of the proposed building, and the purposes for which it is to be used.  Such application must be accompanied by the written consent of all persons owning property within the block in which such proposed building is to be erected or placed.  Upon the filing of such application and written consent of the property owners aforesaid, the council may, by resolution, authorize the construction or erection of the desired wooden buildings within the said fire limits:  Provided, That the names of the members voting for and against said resolution shall be entered on the journal, and a vote of a majority of all the members elected to the council shall be necessary for its passage.

"Section 316.  Any person who shall build, construct or place, or suffer any wooden building to be constructed, built or placed within the fire limits of the city of Poplar Bluff contrary to the provisions of the preceding sections shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than twenty-five nor more than one hundred dollars, and a like fine for every week that he shall continue in violation of the said section.

"Section 317.  Whenever any wooden building shall be constructed, built or placed within the fire limits of this city contrary to the provisions of this ordinance, it shall be the duty of the mayor to issue an order requiring the owner, occupant, person in charge, or builder thereof, to cause such building to be taken down or removed outside of the fire limits.  If the person so notified shall refuse or neglect for the space of ten days to comply with the requirements of the order issued by the mayor as herein provided, then the mayor shall cause such building to be taken down or removed beyond the fire limits, and the expenses incident thereto may be recovered of the owner of such building by suit in any court of competent jurisdiction.

"Section 342.  Whoever shall violate any provision of this ordinance wherein no specified penalty is provided shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one nor more than one hundred dollars."

Also an amendment to section 313, passed November 20, 1899, only changing the description of the boundaries.  Whether the property in question was within the original boundaries does not appear in the pleadings, and makes no difference.  The answer then proceeds as follows:

"Defendants further state that on the 20th day of April, 1908, and while the above ordinances were in full force and effect, the plaintiff W. B. Hays, being desirous of erecting a wooden structure which he called an "Air Dome" upon the west half of lot 61 in the original town, now city of Poplar Bluff, Missouri, and which said lot was within the fire limits of defendant city, filed with defendant's city clerk the following document, to-wit:

"'April 6, 1908.

'To the Mayor and City Council,
    Gentlemen:   We, the undersigned property owners are willing for W. B. Hays to erect an Air Dome on lot 61—stage to be built of iron:
W. B. Hays; Mrs. J. L. Parham, By W. B. Hays, Agt.; Geo. D. Kirkhoff; W. J. Kennedy; State Bank of P. B., by W. W. Turner, Cashier; J. H. Dates, By E. Bacon, Agt.; Mrs. K. M. Arrendale; Mrs. Etta C. Blatt, By C. E. Kinder, Agt.'

"Defendants further state that said plaintiff, W. B. Hays, failed and neglected to file with the mayor or city council an application in writing for permission to erect said wooden structure, setting forth its location, size and manner of construction, and the purpose for which it was to be used, as required by the ordinances of the defendant city, but on the contrary, defendants aver that said plaintiff, W. B. Hays, filed no application whatever for said permit other than the document set out in full above, which purports to be the written consent, to the construction of said building, of all persons owning property in the block in which said wooden structure was to be erected, but which in truth and in fact was not signed by all persons owning property in said block and square in which said building was to be erected, but on the contrary was signed by but a small number of the persons who owned property in said block, and defendants aver that the plaintiff at no time filed with the proper officers of the city the 'written consent of all persons owning prop-

erty in the block in which said proposed building was to be erected' as required by defendant city's ordinances.''

It then states in substance that the following entry appears upon the journal of the proceedings of the city council as of April 27, 1908:

"W. B. Hays presented to the council the consent of all the property owners in lot — of the old town and asks for permission to build an 'Air Dome.'

"AIR DOME.

"W. B. Hays now presents to the council the consent of all the property owners in lot 61 of the old town for him to build an 'Air Dome' on said lot, and now asks permission of the council which is granted."

It is alleged that this entry was made by the clerk without entering the names of members voting for and against it on the journal, without the consent of all the property owners as required by law and without a vote having been taken thereon as required by law, and in violation of the ordinances of the defendant city in that behalf, and of his duties as city clerk, and that it was void. That after the entry of this order the plaintiff, without the consent of the mayor and city council, and without the consent of all persons owning property in the block, wrongfully, in violation of the city ordinances, and in disregard of the lives and property of the inhabitants, built on said lot a wooden structure, the outer walls of which were made of wood, with a wooden stage, chairs and benches, a wooden confectionery stand and other combustible articles too numerous to mention; and afterwards in the same fall wrongfully and without permission of the city or consent of all the property owners, put in a wooden floor, stretched a tent over it for a roof, and changed the name of the structure to ''Tanguay Skating Rink,'' and operated it as a skating rink until the fall of 1909, when he appeared before the council and deceived it

by saying that if it would give him permission to cover the structure with an iron roof he would remove it from the lot the "next spring," and that he intended to use it in the meantime only as a skating rink.

The council once more confided in him, and were again deceived. They were so impressed by his persuasive diction that it did not occur to them to ask him to put it down in black and white, but without any written application they proceeded to write upon their journal as follows:

"September 20, 1909.

"L. & Brandon. On Application of W. B. Hays to permit him to put an iron roof on Tanguay Skating Rink. Permission is granted and carried if the proper petition of property owners is filed."

And which said journal entry was recorded upon the record of the council proceedings as follows:

"BUILDING PERMIT.

"On motion of Langley and seconded by Brandon. It is ordered by the council that a permit be granted to W. B. Hays to erect and place an iron roof on the Tanguay Skating Rink. Said permission is granted if the proper petition of the property owners is secured and filed before commencing the work."

This order, the answer states, was obtained by deceit, and is void. Afterwards, on September 28th, he filed in the office of the city clerk the following:

"To the Honorable Mayor and City Council of the city of Poplar Bluff:

"We, the undersigned citizens and property owners, owning property in lots sixty-one (61) and sixty-two (62) of the city of Poplar Bluff, in which is located the Tanguay Skating Rink, hereby petition your honorable body to permit and grant Mr. W. B. Hays, manager of the Tanguay Skating Rink, the privilege of placing upon the Tanguay Skating Rink an iron roof.

STATE BANK OF P. B., By W. W. TURNER; ETTA GOSS BLATT; JOHN H. DATES, By E. BACON, his Agt.; BACON REALTY CO., By E. BACON, Prest.; MRS. J. J. PARHAM, By W. B. HAYS, Agt.; C. M. DUCKER and SONS; KATE M. ARRENDALE."

The answer then states that this paper contained the names of only a small portion of the persons owning property in the block, and that its filing conferred no right upon the plaintiff, but notwithstanding this the plaintiff proceeded to put on his iron roof, put in permanent wooden partitions, and rented the rooms to divers persons who are conducting in it a saloon, a bowling alley, a billiard and pool room, and a gambling house. As soon as the city learned (so runs the answer) "that said plaintiff intended disobeying his agreement to remove said building, but on the contrary maintaining the same as a permanent structure, to-wit, on January 17, 1910, the proper officers of the defendant city duly passed, and the mayor duly approved" the ordinance we have already copied in connection with the petition, and which constitutes the notice of this action. The answer then proceeds:

"Defendants further state that immediately after the passage and approval of the above ordinance, the defendant city's mayor, John W. Berryman, issued an order on the plaintiff to abate and remove said building, by having served on plaintiff a true copy of the above ordinance, ordering plaintiff to abate said building and to remove the same without the fire limits of the defendant city within ninety days after the passage of said ordinance, but defendants state that the plaintiff although thereto requested according to law and the ordinances of the defendant city, neglected and refused to remove said building within said time, but stated, averred and threatened that he intended keeping and maintaining said building on said lot permanently, and still refuses and neglects to remove the same."

The plaintiff replied by general denial.

A trial was had and testimony taken which fills about three hundred and forty pages of the abstract. It will be unnecessary to examine this.

The preliminary injunction was made perpetual.

I.   The defendants, in their joint answer, admit
that the city, before the institution of this suit, by or-
dinance passed and approved February

Fire Limits:
Special
Immunities.

21, 1910, ordered the plaintiff's building
in question to be abated and removed
within ninety days after the service of
notice of its passage "for the reason that said building
is constructed of combustible material, and, therefore,
a nuisance, and was built in violation of sections 313,
314 and 315 of the Revised Ordinances of the City of
Poplar Bluff of the revision of 1898, and ordinance
No. 24." Also that it immediately served an order and
notice on plaintiff to abate and remove said building
"without the fire limits of the defendant city" within
ninety days. It has, therefore, in the most solemn and
effective form in which it can express itself, threat-
ened to enforce the fire limit ordinance by abating and
removing the plaintiff's building; and the street com-
missioner joins it in a justification of both under the
same ordinance. Neither in the pleading nor in the
briefs of their common counsel does he attempt to
evade any responsibility assumed by the city, and we
cannot make a discrimination in his favor which he
does not deign to make for himself. We will, therefore,
consider the case against both as if the city were the
only defendant. This brings us at once to the question:
Are the provisions of the city ordinance purporting
or attempting to establish fire limits for Poplar Bluff, a
city of the third class, valid?

In considering such questions we usually begin
with some form of the ancient and indubitable propo-
sition that, under our system of government, munici-
pal corporations possess no powers or faculties not
conferred upon them, either expressly or by fair impli-
cation, by the law which creates them, or by other stat-

utes applicable to them. As we said in St. Louis v. Dreisoerner, 243 Mo. 217, 223, " 'any fair reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.' [St. Louis v. Bell Telephone Co., 96 Mo. l. c. 628; St. Louis v. Eddy, 123 Mo. l. c. 557; City of Inpendence .v. Cleveland, 167 Mo. 388.]" The power upon which defendants have planted themselves for justification in this case is contained in section 9228 in article 4 of chapter 84 of the Revised Statutes of 1909, relating to cities of the third class, and is as follows: "The council may also provide, by ordinance, limits within which no building shall be constructed except of brick or stone or other incombustible materials, with fireproof roofs, and impose a penalty for the violation of such ordinance, and may cause buildings commenced, put up or removed into such limits, in violation of such ordinance, to be removed or abated."

That this provision gives ample power to the legislative department of the city government to establish districts in which *no* building of other than incombustible materials shall be constructed is evident; but to construe it to give power to establish districts in which buildings of combustible or incombustible materials may be constructed, as may be arbitrarily determined by the mayor and council in each particular case, requires us to reject its broadly prohibitive words, thus rendering it meaningless and inoperative, or to add words of permission which would defeat the evident object of the enactment, which is that all persons owning property within the limits established, and the general public as well, should be protected against the menace of combustible structures within such limits. It bears no evidence, as does the ordinance, that the Legislature had in mind the idea that each block should stand alone in the matter of such protection, and the record of disastrous fires in cities furnishes no

foundation for such a theory. Nor is there any evidence in the act of a legislative notion that those who might have the necessary influence, the pull, as it is often called in the expressive language of our time, might obtain special permission not open to others, to build combustible structures within the designated limits. It laid down a rule applicable alike to all, of government by law, and not by special privilege or favor. An attempt of the General Assembly to authorize the ordinance in question, would have been an attempt to confer upon the agent of its own creation a lawmaking power which the Constitution had expressly withheld from itself. Clause 26 of section 53 of the fourth article of our Constitution forbids the passage by the General Assembly of any local or special law granting to any person any special right, privilege or immunity. It would, of course, be absurd to say that, in the face of this constitutional inhibition it might by special law, permit such individuals as it should select from time to time to violate a penal law, and grant them immunity therefor. It would be still more absurd to say that the General Assembly could give itself the power to grant such special privileges and immunities by the clumsy subterfuge of inserting in all prohibitive and penal laws a condition that the forbidden act might only be done with its permission expressed by statute. But it would be the most absurd of all to contend that, although the Constitution had withheld from the General Assembly the power to pass such laws, that body might give its own agent, the legislative body of a municipal corporation, the power to make them. It is suggested that although such a condition may be unconstitutional and void, yet the court should simply strike it out, so that in its mutilated condition the ordinance would denounce its penalty against all alike. Thus the court could make an ordinance changing the conditional prohibition of the municipal mayor and council into

an absolute one, avoiding the quicksands of the Constitution. The Supreme Judicial Court of Massachusetts answered this proposition in Austin v. Murray, 16 Pick. 121, 126, as follows: ''A by-law being entire, if it be void in part, shall be void for the whole. The reason is obvious, for if a part of a by-law might stand good, while another essential part could not be sustained, the object of the by-law might be defeated, and injurious consequences might follow against the intention of the framers.'' The by-laws so held to be entire consisted, like this ordinance, of a general prohibition to do a certain thing without the consent of the selectmen.

The mayor and city council of Poplar Bluff, under the charter power we have quoted, undertook to establish fire limits within which they attempted to make it unlawful *without a special permission from the mayor and city council,* ''to construct any edifice, building, structure or shed, the outer walls of which are in whole or in part made of wood.'' The combustible character of the structure seems to be entirely ignored. A shed with metal angles or gas pipe for framework and tarred paper for walls and roof would evade the description of the prohibited structures as completely as brick or stone with fireproof roof. But the vice most important in this ordinance is its general scheme by which the city council places its paternal hand upon the interests of the people of the city with the manifest intention of gathering to itself the undefined and arbitrary power to determine who shall have the special privilege of erecting buildings of combustible materials in these areas, and who shall be denied, without being entitled to the courtesy of a reason. This cannot be done. The reason is well expressed by the Supreme Court of Indiana, in Elkhart v. Murray, 165 Ind. 304, as follows: ''If an ordinance upon its face restricts the right of dominion which the owner might otherwise exercise without ques-

tion, not according to any uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the city authorities, it is invalid, because it fails to furnish a uniform rule of action, and leaves the right of property subject to the will of such authorities, who may exercise it so as to give exclusive profits or privileges to particular persons.'' The wealth of authority opened by the court in its citations in that case has been of great assistance in the investigation of the subject. This court also, in St. Louis v. Russell, 116 Mo. 248, 257, held an ordinance of the city of St. Louis invalid ''for the reason that by its provisions one citizen is permitted to erect a livery stable in a certain locality by obtaining the written consent of the owners of one-half the ground in the block, while another of like merit would not be permitted to do so for want of such consent.'' In that case the court cites, with its approval, numerous authorities; among others, Barthet v. New Orleans, 24 Fed. 63, in which an ordinance of that city was held invalid which made it unlawful to maintain a slaughter house ''except permission be granted by the council of the city of New Orleans;'' State v. Mahner, 43 La. Ann. 496, in which an ordinance forbidding the keeping of more than two cows by any person within certain prescribed limits in the city without a permit from the city council was held void; Richmond v. Dudley, 129 Ind. 112, in which an ordinance forbidding the storing of inflammable or explosive oils within the limits of the city of Richmond, without the permission of the common council, was held void; State v. Dubarry, 44 La. Ann. 1117, in which an ordinance of the city of New Orleans was held void because it prohibited the setting up of any private market without permission of the city council; Newton v. Belger, 143 Mass. 598, in which an ordinance permitting the board of aldermen to exercise their discretion in granting or refusing permits for the erection of

buildings within the fire limits was held invalid; and State v. Tenant, 110 N. C. 609, 612, in which a like fate befell an ordinance of Ashville, North Carolina, forbidding the erection of a building in the city without having first applied to the aldermen and obtained permission for that purpose. All these cases were decided upon principles stated in Elkhart v. Murray, supra, and repeated by the Supreme Court of North Carolina in the case last cited, as follows: "If an ordinance is passed by a municipal corporation, which, upon its face, restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of aldermen who may exercise it so as to give exclusive profits or privileges to particular persons." The sentence quoted is followed by a long list of authorities to the same effect. The same principle is restated, with a liberal citation of authorities, by this court in St. Louis v. Atlantic Quarry Co., 244 Mo. 479, 487. Our conclusion is that the ordinance in question is void because it is not within the legislative powers delegated to the city by its charter; because it violates the fundamental principle inherent in our constitutional system that when a municipal corporation seeks by ordinance to restrict for the public good the rights of the individual otherwise incident to the ownership of property, it must do so by a rule applicable to all alike under the same circumstances, and cannot make his enjoyment of his own depend upon the arbitrary will or caprice of the municipal legislature; and because its refusal to consider applications for relief from the enforcement of its prohibitory terms unless accompanied by the writ-

ten consent of the property owners of the block amounts to a delegation of the legislative power of the city to such property owners.

We have considered these questions at greater length than we would otherwise have thought necessary because the decision of this court in St. Louis v. Fischer, 167 Mo. 654, is, we think, inconsistent with the conclusion at which we have now arrived. Although that case is irreconcilable with the Russell case, supra, in which the learned judge who wrote it concurred, and which brings to its support many well considered adjudications of this and other courts, it does not overrule nor even mention it. The one case cited in the Fischer case to the points we have considered, is Railroad v. Kirkwood, 159 Mo. 239, in which a condition contained in an ordinance of the town of Kirkwood giving a railroad company the right to build and operate its road upon a street, was held to be valid. There is evidently no similarity between the two cases. In the Kirkwood case, the town in giving the use of its own street which it may give or withhold to any extent it pleases. In this case the city has nothing to give, but is appropriating the property of the individual to the use of the people through the exercise of the police power of the State, and must look to the grant of that power for the exact limits of its right. So far as the Fischer case conflicts with the Russell case, supra, it is disapproved, and the doctrine of the latter, as well as of St. Louis v. Dreisoerner, supra, and St. Louis v. Atlantic Quarry Co., supra, is approved.

II. There is nothing in the objection that the respondent is not entitled to injunctive relief because he has an adequate remedy at law.

Injunctive
Relief: Trespass.

The injunction forbids the tearing down of the building, interference with the plaintiff's possession or title to the land and

building·thereon, and the molesting of plaintiff or his tenants.

Our statute (R. S. 1909, sec. 2534) declares, probably in conformity to the rule of the common law, that the remedy by writ of injunction shall exist in all cases where an irreparable injury to real or personal property is threatened, *and,* to prevent the doing of any legal wrong whatever whenever in the opinion of the court an adequate remedy cannot be afforded in damages. One of the most common uses of the writ is to prevent injury to or destruction of property by the unauthorized or wrongful exercise of police powers by municipal corporations. In Life Insurance Co. v. St. Louis, 98 Mo. 422, it was successfully used to prevent the destruction of a building by the city in opening or improving a street. In Boyd v. Frankfort, 117 Ky. 199. it was used to prevent the destruction of a church without the consent of the common council as required by ordinance. The court said (p. 213): ''There can be no doubt of the right of appellants to maintain this action. The law authorizing it has been repeatedly declared by this court. Thus in the City of Newport v. Bridge Co., 90 Ky. 193, it was held that: 'If a city ordinance is invalid, one who is affected by it has the right, in order to prevent irreparable injury and a multiplicity of prosecutions to go into a court of equity for relief.' '' In Barthet v. New Orleans, supra, in sustaining this remedy the court said: ''It is not enough that there is a remedy at law; it must be plain and adequate; or, in other words, *as practical* and efficient to the ends of justice and its prompt administration as the remedy in equity.'' The excellence of the equitable remedy in a case like this is that it admits of the doing of complete justice by preserving the status without the destruction or loss of property which must precede and sustain the action for damages. Its selection in such cases is commendable.

For the reasons stated, the judgment of the circuit court for Wayne county is affirmed.  *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of *Brown, C.,* was adopted by Division One, all the judges concurring except *Bond, J.,* who dissented. The cause was transferred to Court in Banc because the opinion conflicts with the decision of Court in Banc in St. Louis v. Fischer, 167 Mo. 654. In Banc the cause has been reargued, and the foregoing opinion of *Brown, C.,* adopted as the decision of the court, all the judges concurring except *Woodson, C. J.,* and *Bond, J.*