THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JESÚS BENÍTEZ CASTAÑO, Defendant and Appellant.

No. 7457. Argued March 14, 1939.—Decided July 13, 1939.

*Jorge Benítez Gautier* and *Gustavo Benítez Gautier,* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Gabriel Hernández, Insular Policeman, charged Jesús Benítez Castaño with an infraction of the Automobile Law, committed as follows:

"That on April 15, 10:15 A. M., 1938, and in Loíza St., corner of San Jorge of Santurce, of the Municipal Judicial District of San Juan, P. R., which is part of the Judicial District of San Juan, P.

R., the aforesaid defendant Jesús Benítez Castaño then and there, illegally, wilfully and with malice, violated the provisions of Section 5, par. (J) of the Automobile Law in force, approved on May 13, 1916, as amended, to regulate the use of motor vehicles on the public roads of Puerto Rico, because while driving automobile No. 10,674, his property, along said place, which is a public road, he did not carry with him, his license or permit, to authorize him to drive motor vehicles on the roads of Puerto Rico, on being requested to show it to the complainant.''

From the judgment of conviction rendered against him in the municipal court, Benítez appealed to the district court. After a trial *de novo* the district court found him guilty and sentenced him to pay a fine of one dollar or a day in jail, and costs.

Benítez appealed to this Court and in his brief charges two errors, to wit: that the complaint does not state facts to charge a crime and that par. (J) of Section 5 of the Automobile Law is null and void because it violates the Constitution of the United States of America.

1. Discussing the first error appellant cites Section 2, par. (A) of the Automobile Law, which provides:

''Section 2.—(*a*) That it shall be unlawful for any motor vehicle to be operated on a public highway in Porto Rico without a license therefor issued by the Commissioner of the Interior. To obtain such license, the owner of the motor vehicle to be licensed shall file an application therefor on a form prescribed and furnished by the Commissioner of the Interior, which shall show his name and address, a brief description of the vehicle for which the license is desired, including factory number, style of vehicle, horsepower, whether for public or private use and such other information as the Commissioner of the Interior may require to enable him to carry out the provisions of this Act.''

Then Section 5, par. (A) which establishes:

''Section 5.—(*a*) That no person shall operate a motor vehicle in Porto Rico without having been issued a license to do so by the Commissioner of the Interior. Such licenses shall be issued on ap-

plication made therefor on a form prescribed by the Commissioner of the Interior, giving such information relating to the applicant as he may deem necessary for the purposes of this Act."

And finally paragraph (J) of the same Section 5, and Section 6 of the Act, which provide as follows:

"Section 5.—(j) Each license shall have a serial number and the person to whom it is issued shall be furnished a metal badge having the same number which shall be carried with the licensee whenever driving a motor vehicle. The badge shall be shown to any police or road officer in uniform, on showing his badge, who asks to see it while the licensee is operating a motor vehicle.

"Section 6.—That non-residents of Porto Rico operating automobiles under the provisions of section 4, are exempt from the license requirement of the previous section, but they shall obtain a certificate to that effect from the Commissioner of the Interior to be carried on the person while driving such a motor vehicle. Such certificate may be suspended or revoked in the same manner prescribed for the suspension or revocation of a license to operate a motor vehicle, provided for in the preceding section."

He then says:

"Comparing the provisions of paragraph (j) of Section 5 with Section 6, it is evident that both have as object, the regulation of the act, that is, that the driver of a vehicle should carry with him his license or permit while driving. It is also clear that if a resident of Puerto Rico would commit a crime in not bearing his license or permit, so would a non-resident in not bearing the certificate to which the law refers, since it is a general principle of law in this country that no discrimination may exist in its statutes in favor of nor against any class of citizens. This being so, before the appellant in this case could be punished it would be necessary that this Court decided that the clause "to be carried on the person while driving such a motor vehicle" contains in it all the elements needed for the creation and definition of a statutory crime."

In our judgment in both cases, that of the resident and of the non-resident, the law is violated if said persons do not carry with them, the license, the former, and the certificate the latter. Though more specific in the first case, the law is sufficiently clear in the second so that no one can claim

error. We really do not consider that the argument bears much relation to the assignment.

The other reason adduced to maintain said error is that the Legislature did not fix a penalty for the infraction charged.

Act No. 75 of 1916, p. 144, To Regulate the Operation of Motor Vehicles in Porto Rico, and for Other Purposes, as amended by Act No. 55 of 1921, p. 422, by Act No. 9 of July 15, 1926, p. 22, completely regulates the matter. Its Section 18 is as follows:

"Section 18.—Any person, firm, partnership or corporation who itself or through its agent, transports on heavy motor vehicles or on commercial vehicles a load greater than that authorized hereby, shall be fined fifty (50) dollars for the first violation, one hundred (100) dollars for the second, and in case of a third violation the license to operate the vehicle shall be revoked. The license of any chauffeur operating a heavy motor vehicle or commercial automobile on the public roads, with a load greater than that authorized hereby, or at a rate of speed greater than provided in this Act, or lacking the speed regulator required by paragraph (c) section 13 hereof, shall be suspended for one month for the first violation, six months for the second and finally revoked on a third violation. The violations of other provisions of this Act shall be deemed to be misdemeanors."

To us it seems clear and final. The fact that when amended in 1926 the penalties in relation to heavy motor vehicles, that is, those for carrying freight, were established first, does not make less definite or clear the other provision about the penalty for the other infractions, among which is that charged to appellant. Therefore, the first error assigned does not exist.

Neither does the second one which is argued with great emphasis in the brief. The gist of the argument is contained in the following paragraph of the same:

"According to said provision, paragraph (j) of Section 5 of Act No. 75 of 1916, any insular policeman of Puerto Rico may at any time when he feels like it, stop a person driving a motorcar along the insular roads, taking into account no fact or circumstance and

under no other rule of conduct than his whim to demand from said person his license or permit. In approving this part of the Act, the legislator left to the whim of the policeman to favor or harm citizens, according to the state of mind, or degree of friendliness or unfriendliness, that the traffic officer may feel for a certain person; thus violating the most sacred constitutional principles, such as the right to life, and the right to fully enjoy life, expressed both in our Organic Act and in the Constitution of the United States.''

He cites Section 329, page 1135 of 11 American Jurisprudence, which says:

''Personal liberty largely consists of the right of locomotion—to go where and when one pleases—only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. The right of a citizen to travel upon the public highways and to transport his property thereon, by horse-drawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but a common right which he has under his right to life, liberty, and the pursuit of happiness. Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected, not only in his person, but in his safe conduct.''

He then invokes various decisions of the courts among which stands out that of *City of St. Louis* v. *Allen*, of 'the Supreme Court of Missouri, reported in 204 S.W. 1083, by which an ordinance of the City of St. Louis was annulled as unconstitutional. The ordinance contained the following provisions:

''Sec. 1351. . . . Drivers must at all times comply with any direction by voice or hand, of any member of the police force, as to stopping, starting, approaching or departing from any place; the manner of taking up or setting down passengers or loading or unloading goods in any place.''

''Sec. 1357. . . . Any person violating any of the foregoing provisions, rules and regulations shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not to exceed one hundred dollars.''

As the opinion contains a study of the questions in issue and the jurisprudence, and throws light on the scope of the invoked constitutional principle, we deem proper to copy most of it. It says:

"However meritorious the city's rights may be if properly presented, the ordinance relied on by the city in its complaint is invalid.

"In *Mayor, etc., of Baltimore* v. *Radecke*, 49 Md. 217, 33 Am. Rep. 239, the city ordinance provided that no one should erect a steam engine without the previous sanction of the mayor and council, and that any such engine so erected should be removed within six months after such permit should be revoked and notice given by the mayor. It was there held that the city by ordinance could prescribe regulations for the use of steam engines, but that it could not commit to the unrestained will of a single officer the power arbitrarily to favor one individual in that respect and to impose his will on another. It was there said:

"'In fact, an ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void.'

"That case is cited with approval in 1 Dillon on Mun. Cor. (4th Ed.) Sec. 321.

"In *Richmond* v. *Dudley*, 129 Ind. 112, 28 N. E. 312, 13 L.R.A. 587, 28 Am. St. Rep. 180, it was held that city ordinances must specify rules and conditions to be observed in the conduct of business, and must allow all citizens the same privileges under those rules, and must not empower an officer to arbitrarily discriminate between individuals in that respect. That case is cited with approval in *City of Elkhart* v. *Murray*, 165 Ind. 304, 75 N. E. 593, 1 L.R.A. (N. S.) 940, 112 Am. St. Rep. 228, 6 Ann. Cas. 748. That rule is affirmed in *Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9, 51 N. E. 758, 42 L.R.A. 696, 68 Am. St. Rep. 155, and the long list of cases there cited.

"In *Hays* v. *Popular Bluff*, 263 Mo. 516, 173 S. W. 676, L.R.A. 1915 D, 595, it was held in banc that, though a city can prescribe 'fire limits,' yet it has no power to ordain that no building shall be constructed of the prescribed materials without the permission of the mayor and council, and that such permission shall not be given without the written consent of all persons holding property in the block. It was there said that in such matters the ordinance must make

rules applicable to all alike, and that such matters cannot be left to the arbitrary will of any one. That case cites with approval the Indiana cases above mentioned.

"The ordinance here involved puts the citizen in the arbitrary power of the officer, regardless of the circumstances of the case. Its invalidity is so glaring that the respondent has not cited any authority to uphold it. In *Bessonies* v. *City of Indianapolis*, 71 Ind. 189, and in *City of Elkhart* v. *Murray*, 165 Ind. 304, 75 N. E. 593, 1 L.R.A. (N. S.) 940, 112 Am. St. Rep. 228, 6 Ann. Cas. 748, supra, it was held that such ordinances are violative of the constitutional provision which guarantees the equal protection of the laws. It was there said that what the Legislature cannot do, it cannot authorize a municipal corporation to do.

"In our opinion the ordinance in question is subject to the objection that it may deprive persons of the equal protection of the laws, and that, though the city may have a most meritorious case, it cannot be based on that invalid ordinance."

In our judgment the law here enforced violates no constitutional provision. It is within the power of the Legislature and has been enacted because of the needs of the times. Acting by virtue thereof, the police can be arbitrary as it also can in prosecuting any of the crimes established and punished by the Penal Code; but it does not carry within it the seed of discrimination. It was enacted with the spirit that it should be applied equally for everybody and for the ultimate welfare of all. It leaves nothing to chance. It contains a clear and exact rule.

In the same encyclopedia cited by the appellant, American Jurisprudence, we find at volume 5, page 526, the following:

"The privilege of using public highways does not amount to an absolute and unqualified right, but is subject to regulation by the state acting under its police power as sovereign authority. This power of regulation has expanded to meet changing conditions. With the introduction and development of automobiles as a means of conveyance, it has advanced and has conferred ample authority to regulate their use. Accordingly, the legislature of each state has the power to require the licensing of every motor vehicle operated within its boundaries and to establish detailed and reasonable regulations applicable to their use upon the public highways. The speed

at which they may be operated on the highways and the highways and localities where they may be operated fall within the scope of legislative power. The state may provide by statute that a failure to comply with any of the legislative regulations shall constitute a misdemeanor or that persons driving automobiles shall be responsible in damages for all injuries which may be the result of a violation of any of the statutory provisions. The constitutional provisions protecting persons from being compelled to testify against themselves have been held not to be applicable to legislation regulating the operation of motor vehicles and requiring, under penalty, the display of license number; nor do such laws infringe the constitutional inhibition of unreasonable searches.

"Such regulations may be applicable to roads and streets not public highways if used for travel by the public."

We agree that the enforcement of the law in question requires a great tact from the police and we also agree that the main thing is the possession of a license. But the legislator thought that for greater security and for equality among everyone, the license should be borne by those who have it, while driving an automobile, and the rule should be obeyed, leaving to the judge the facts that may concur in imposing punishment. If it is really an oversight, the penalty may be the lowest. Here the court only fined the appellant one dollar surely because it thought that he did not have the deliberate intent of breaking the law, intent that is not absolutely necessary to consider that the violation has been committed.

It seems proper to finish by repeating what this Court said and decided through Mr. Associate Justice Hutchison, seventeen years ago, construing the same provision of law—paragraph (j) of Section 5 of the Act to regulate the operation of motor vehicles, of 1916—here involved, in the case of *People* v. *Velázquez*, 30 P.R.R. 334, 335, to wit:

"Appellant, at the time of his arrest, had just arrived at an hotel and was seated in his machine. His baggage containing the badge was in the office of the hotel. He had ceased to operate the machine and it is not claimed, nor was it shown at the trial, that any baggage

had been removed before coming to a full stop, or that the bag containing the badge had not been in the car at all times while the same was in motion.

"Most of the testimony relates to the details of an incident which led up to the arrest of the appellant. This prelude, however, has nothing to do with the real question involved, and need not be discussed.

"The law does not say that the badge must be carried by an owner whenever seated in his car, regardless of circumstances, but whenever driving. Nor does it say that the badge must be produced whenever requested by a policeman, but only when the officer 'asks to see it while the licensee is operating a motor vehicle.'

"A little more courtesy and consideration on the part of the police, to say nothing of a trifle more tact and diplomacy on the part of motorists, in dealing with a somewhat delicate situation, would sometimes save the courts the trouble and the Government the expense of disposing of cases in which the only crime committed is a mutual breach of etiquette with extenuating circumstances."

The judgment should be affirmed.

Mr. Justice Wolf dissented.

Mr. Justice Travieso took no part in the decision of this case.