The STATE of Missouri, at the relation of William H. DANIELS and Kathryn Daniels, Relators-Respondents,

v.

Walter A. KASTEN, as Mayor of the City of Jackson, Missouri, Jim R. Litzelfelner, Pertle E. Probst, Kermit Wallenmeyer, E. W. Stovall, Johnny Gibbs, Martin E. Piepenbrok, Chester O. Lincoln and Willard Klaus, as Aldermen of the City of Jackson, Missouri, Hubert W. Seabaugh, as City Clerk of the City of Jackson, Missouri, and Arlus J. Seabaugh, as Building Inspector of the City of Jackson, Missouri, Defendants-Appellants.

No. 31651.

St. Louis Court of Appeals.

Missouri.

Sept. 25, 1964.

———◆———

Buerkle & Lowes, Albert C. Lowes, Jackson, Jackson & Thomasson, Donald P. Thomasson, Cape Girardeau, Paul A. Mueller, Jr., Jackson, for defendants-appellants.

Finch, Finch, Knehans, James A. Finch, Jr., Cape Girardeau, for relators-respondents.

ANDERSON, Judge.

This is an action in mandamus brought by William H. Daniels and Kathryn Daniels, as relators against certain officers of the City of Jackson, namely the Mayor, Aldermen, City Clerk and Building Inspector, to compel them to issue to relators a permit for the construction of an addition to their building to be used for the slaughtering of animals for food. Following the trial of said cause the court rendered judgment for relators making peremptory its alternative writ previously issued, which writ had ordered the officials of the city to issue said building permit or show cause why they should not do so. Defendants appealed to the Supreme Court on grounds that the appeal was vested in said court because constitutional questions were involved. The Supreme Court ruled there was no question raised in the trial which involved the construction of the Constitution of either the United States or the State of Missouri, and transferred the case to this court. State of Missouri ex rel. William H. Daniels et al. v. Walter A. Kasten et. al., Mo., 368 S.W.2d 429.

Jackson is a city of the fourth class located within Cape Girardeau County. At all times mentioned herein Walter A. Kasten was the Mayor of said City. The Members of the Board of Aldermen were Jim R. Litzelfelner, Pertle E. Probst, Kermit Wallenmeyer E. W. Stovall, Johnny Gibbs, Martin E. Piepenbrok, Chester O. Lincoln and Willard Klaus. Hubert W. Seabaugh was the City Clerk, and Arlus J. Seabaugh, the Building Inspector of said city.

William H. Daniels and Kathryn Daniels are the owners of a certain tract of land in Jackson, to-wit; Lot 10 in the original town, now the City of Jackson.

The City of Jackson has an ordinance, being No. 1570 relating to the construction of buildings within the city. By said ordinance it is provided that no wall structure, building or part thereof shall be built, enlarged or altered until the proposed project or construction together with the statement of the materials to be used shall have been submitted to the City Clerk, who shall bring the matter before the Board of Aldermen, who shall, if the same be in accordance with the provisions of the ordinance, issue a permit for the proposed construction. The ordinance sets out the form of application to be used. This form calls for disclosure of the name of owner, name of contractor, type of building and size thereof, and estimated cost. By paragraph 2 of said ordinance it is provided that no permit shall be issued to construct a business house in any residential district unless there shall be submitted to the Board of Aldermen a petition in writing signed by three-fourths of all the property owners in that district giving their consent thereto. A residential district is defined as any given street in the city where the majority of structures facing both sides of the street are used for human habitation or for religious worship, and in the event said business house is being erected on a corner lot the consent of the property owners of lots on the facing street and the property owners facing both sides of the street along the side of the building shall also be obtained.

There was also in existence in Jackson at all times herein mentioned Ordinance No. 79 which reads as follows:

"It shall be unlawful for any person or persons to establish or maintain a regular slaughter house within the corporate limits of this city, or within one hundred yards of the city limits or any dwelling, street, highway, or thoroughfare, for the purpose of slaughtering cattle, hogs, sheep or other animals, and it shall be unlawful for any person or persons to carry on the business of slaughtering within the city limits. Any person violating the provisions of this ordinance shall be deemed guilty of a misdemeanor and, upon conviction, shall forfeit and pay to the city not less than five nor more than fifty dollars."

Relators' signed application for a building permit was filed with the City Clerk on November 20, 1961. It contained the following information:

"Name of owner—Wm. H. Daniels
Name of contractor—Strack Bro.
Type of building and size thereof—Commercial
38' x 18' 8" 16 feet in Height
Estimated Cost—$5,000.00
Location (lot, block or addition) Lot 10, Original Town of Jackson
Type of materials to be used—Additional to present Building.
Concrete foundation, concrete Floors, brick veneer walls; masonry walls, built up roof."

W. H. Daniels testified that the application for the building permit was for an addition to Relators' then existing food locker. He further testified that he contemplated to later install in this building refrigeration and other equipment, and in-

tended to slaughter animals inside the building; that this was to be in connection with the operation of his business there at Jackson. He stated he took bids for the construction and Strack Brothers were the low bidders at $5,111.80.

He further stated that at the hearing before the Board of Aldermen, he made the statement that the total investment would run around twenty some odd thousand dollars; that the greater amount of the investment would be for refrigeration equipment and other equipment that would be installed in the building; that there would be no outside pens of any kind used in connection with the operation of the business, and no animals would be held there over night; he told the City Council that the offal from the killing operations would be picked up by one of the packing plants and hauled off and not rendered at his place in Jackson; that his facilities and method for cleaning would be similar to those in use in other plants in Missouri and would meet the requirements of the Department of Health; that he anticipated spending $29,000 for the operation; that he did not think the matter of his spending $5,000 for the building and $24,000 for equipment was discussed at the meeting with the Council; that in estimating the cost in his application for a permit at $5,000 he deemed it included just the three walls, roof and floor, and not the cooler and equipment or the blacktopping of the drive; that he did not secure the consent of three-quarters of the people in the immediate area, as required by Ordinance 1570.

Walter A. Kasten, the Mayor of Jackson, testified on behalf of the defendants. He testified he recalled Mr. Daniels making the statement to the Council that he intended to expend approximately $29,000 on the project; that after Mr. Daniels and Mr. Finch left the meeting, he and the members of the Council thought the estimated cost was underestimated. He stated that other grounds for turning down the

application were the requirement of Ordinance 1570 with respect to consent of three-fourths of the property owners, and Ordinance 79. Subsequently on December 18, 1961, the Council took formal action and rejected the application. The book containing the minutes of that meeting was not produced at the trial, but Mr. Kasten testified it showed, " * * * 'We will reject the application on the grounds of our ordinance.'" He further stated that the motion to reject the application made no reference to the cost of the project.

The trial court in response to defendants' request made findings of fact and conclusions of law. The only parts thereof material to this appeal are as follows:

"4. Relators duly applied on November 20, 1961 for a building permit to build an addition to the existing building on said real estate.

"5. Defendants refused to issue the building permit and based their refusal on Ordinances 79 and 1570 of the City of Jackson set out in Exhibits B and C of relators' petition.

"6. Ordinance 79 is invalid under the holding of the St. Louis Court of Appeals in [State ex rel.] Jack Frost Abatoirs [Abattoirs] Inc. vs. A. J. Steinback [Steinbach], 274 S.W.2d 588.

"7. Ordinance 1570 is invalid under the holding of the Missouri Supreme Court in the case of Hays vs. City of Poplar Bluff, 263 Mo. 516 [173 S.W. 676, L.R.A.1915D, 595].

"8. Mandamus will 'e to compel the issuance of a building permit.

"THEREFORE the alternative writ is made peremptory and the defendants are hereby ordered to issue a building permit of the City of Jackson, Missouri to the re-

lators for the construction of an addition to the existing building on Lot 10 in the original town, now city, of Jackson, Missouri, in accordance with the application for building permit filed by relators on November 20, 1961."

The first point made by appellants is that the trial court erred in holding Ordinance 79 invalid. In support of the assignment it is urged that under section 79.370 RSMo 1959, V.A.M.S., a city of the fourth class has the statutory right to prohibit slaughter houses within the city. Said section is a part of Chapter 79 RSMo 1959, V.A.M.S., which deals with cities of the Fourth Class. It provides that "The board of aldermen shall have power, by ordinance, to secure the general health of the inhabitants of the city by any measure to regulate, suppress and abate slaughter houses, slaughtering animals, * * * and to pass ordinances for the prevention of nuisances and their abatement." In State ex rel Jack Frost Abattoirs, Inc. v. Steinbach, Mo.App., 274 S.W.2d 588, this court held that the statute did not empower the city to prohibit slaughterhouses, since the words "regulate, suppress and abate" refer to actions directed toward something in existence, while "prohibit" prevents its coming into existence. In that case we affirmed a judgment for Relators in a mandamus proceeding brought to compel the issuance of a building permit for a slaughter house in Montgomery City, Missouri, on the ground that Section 79.370, RSMo 1959, V.A.M.S., supra, did not empower the city to prohibit the building of slaughter houses within said city. We still hold to the views expressed in that opinion, and therefore rule that the trial court in the case at bar did not err in holding the ordinance invalid.

Appellants also attack the ruling of the trial court that Ordinance 1570 was invalid.

One of the grounds upon which the Board of Aldermen refused to issue the permit was non-compliance by Relators with paragraph 2 of Ordinance 1570, which requires the filing of the written consent of three-fourths of the property owners in the residential district where the proposed building is to be erected. The trial court held said ordinance invalid under the authority of Hays v. City of Poplar Bluff, 263 Mo. 516, 173 S.W. 676, L.R.A.1915D, 595, in which case an ordinance of the City of Poplar Bluff which contained a similar provision was held void for the reason that it amounted to a delegation of legislative power of the city to such property owners, a power not conferred on said city by its charter.

This same ruling was made in the earlier case of City of St. Louis v. Russel, 116 Mo. 248, 22 S.W. 470, 20 L.R.A. 721. In that case the court declared void a city ordinance which provided that no permit to conduct a livery stable without the written consent of the owners of one half the ground of the block where said livery was proposed to be located. The court in passing on the question said " * * * Ministerial powers may be delegated by a city, but legislative powers cannot. Legislative power implies judgment and discretion on the part of those who exercise it, and a special confidence and trust on the part of those who confer it."

Any other rule could lead to undesirable results. For instance, one person might obtain permission from the required three-fourths because he was more popular in that area, while another might be refused though the businesses and buildings were identical. Then again another person might succeed in buying enough land in the area to have a controlling voice in the matter. Thus the effect of such a provision is to make the right to build in a particular location dependent wholly on the will and whim of the owners in that vicinity without the application of any sensible fix-

ed guide lines or standards, calculated to protect the interests of all the inhabitants, and result in unequal treatment under the law.

Our conclusion is that under the Supreme Court cases we are bound to hold that the trial court did not err in finding the provision of the ordinance in question invalid.

■ Appellants also contend that the trial court erred in not making a finding with respect to whether the Board could refuse a permit where the cost of the building had been significantly and materially understated in the application.

In the first place there was no sufficient evidence in the record that would have justified a finding that the cost of the building in the case at bar had been significantly and materially understated. In their application relators estimated the cost of the building at $5,000. At the trial Mr. Daniels testified that the low bid for its construction was $5,111.80. Under this evidence it could hardly be said there was a significant and material understatement. For that reason no useful purpose would have been served for the court to make the finding which appellants now contend should have been made. It could not have materially affected the result of the trial. If such a finding had been made it would have been error for lack of evidence to support it. Furthermore there is no substantial evidence that the building permit was rejected for the reason that the estimated cost was materially underestimated. Mr. Kasten, the mayor, testified that the motion rejecting the application made no reference to the question of costs.

We find no error in the record.

The judgment of the trial court is affirmed.

E. M. RUDDY, P. J., and WOLFE, J., concur.