CITY OF ST. LOUIS, Plaintiff in Error, v. POLAR WAVE ICE & FUEL COMPANY.—296 S. W. 993.

Division One, July 30, 1927.

1. **ORDINANCE: Delegation of Legislative Power.** A city cannot delegate its power to make a law, but it can make a law delegating a power to determine some fact or state of things upon which the law makes, or intends to make, its own action dependent.

2. ————: **Restricting Natural Right.** An ordinance conditionally restricting the exercise of a right otherwise exercisable without question, and making that exercise dependent upon the arbitrary will of a city officer, is invalid.

3. ————: ————: **Private Stable: Police Power: Uncontrolled Discretion.** An ordinance declaring that a stable for private use, having accommodation for ten or more horses, shall not be opened, built or established on any lot within the city, without written permission so to do having been first obtained from an administrative board, is invalid. Although the business which it prohibits is subject to the police power, and an ordinance enacted in the exercise of that power cannot be lightly disregarded, the business or activity is ordinarily lawful, and the power must be exercised reasonably, with due regard to certainty, and to uniformity of application according to some proper standard fixed by legislative authority; and by the ordinance, the keeper of a stable of horses for his own use must have a permit, but whether he may or may not obtain such permit is made to rest in the discretion of an administrative board, unrestricted, and unmeasured by reference to any test or standard provided by the ordinance, and therefore it lacks validity.

4. ————: **Right to Invoke Invalidity: No Application for Permit.** The ordinance having prohibited the pursuit of a business otherwise lawful without the permission of an administrative board, and being invalid because it contains no requirement that the application for a permit contain a statement of the qualifications to be inquired into by the board, or upon which the board shall exercise its unrestricted discretion in view of the evidence offered, and because its provisions directly and immediately affect all persons who undertake to conduct the prohibited business, a defendant charged

with its violation may, although he has made no application for a permit, raise its invalidity as a defense, on the ground that it affords no one of his class protection against an arbitrary exercise of a discretion in the board to deny a permit.

---

Corpus Juris-Cyc. References: **Livery Stable and Garage Keepers,** 38 C. J., Section 6, p. 75, n. 30. **Municipal Corporations,** 43 C. J., Section 229, p. 229, n. 70; Section 231, p. 232, n. 83; Section 241, p. 243, n. 5; Section 254, p. 254, n. 42; Section 614, p. 448, n. 77; Section 652, p. 461, n. 56; Section 653, p. 462, n. 67.

Writ of Error to St. Louis Court of Criminal Correction.—*Hon. Anthony Hochdoerfer,* Judge.

AFFIRMED.

*Julius T. Muench* and *Charles J. Dolan* for plaintiff in error.

(1) The city of St. Louis is empowered to prohibit all things whatsoever liable to be detrimental to the health, comfort or welfare of its inhabitants. Charter, Art. I, sec. 25. (2) The Board of Aldermen is authorized to exercise all the powers of the city and to provide all means necessary or proper therefor. Charter, Art. IV, sec. 23. The board has authority to determine and fix the number of horses which may be kept in one stable without detriment to the public health and comfort, and having such authority it may exercise it by prohibiting the keeping of such number of horses in any one stable "except in case a permit is procured from designated officials." Oakley v. Richards, 275 Mo. 279; St. Louis v. Fischer, 167 Mo. 662; Fischer v. St. Louis, 194 U. S. 371. (3) As defendant in error has not been refused a permit by the Board of Public Service, no question of the arbitrary exercise of discretion is presented in this case and appellant is in no position to attack the validity of the ordinance in question. State v. Baskowitz, 250 Mo. 89; Alaska Mining Co. v. Territory of Alaska, 236 Fed. 70; Gundling v. Chicago, 177 U. S. 186. (4) The subordination of property rights to the just exercise of the police power is as complete as is the subjection of these rights to the proper exercise of the taxing power. Kidd v. Pearson, 128 U. S. 1. (5) An ordinance should be upheld if it can be construed as valid. Bledsoe v. Stallard, 250 Mo. 165; State ex rel. v. Mason, 153 Mo. 49. And every possible presumption is in favor of validity. Sinking Fund Cases, 99 U. S. 718. (6) An ordinance or statute should be so construed, if possible, as to bring it in harmony with the Constitutional provisions. State ex rel. v. Atkinson, 271 Mo. 42; Hooper v. California, 155 U. S. 648; Strickland v. State, 36 L. R. A. (N. S.) 115; People v. Wm. Howning Co., 49 L. R. A. (N. S.) 1206.

*Foristel, Mudd, Hezel & Habenicht, James T. Blair* and *Frank X. Hiemenz* for defendant in error.

(1) Plaintiff in error failed to make out a case on the record against defendant in error under any of the sections of the ordinance introduced in evidence, particularly Section 2580. (2) Section 2580 only prohibits, after the passage of the act, the opening, building or establishment of public or private stables having accommodations for ten or more horses on any lot of ground or in any building in the city of St. Louis. It is wholly prospective in its operation. There was no evidence offered by plaintiff in error as to when the stable in the case at bar was opened, built or established. (3) It is not a violation of any of the ordinances offered in evidence to conduct a private stable which has accommodations for more than ten horses. The opening, building or establishment of such a stable is only prohibited after the passage of the ordinance. (4) Section 2580 expressly vests discretionary power in the Board of Public Service to grant or withhold its written permission to "open, build or establish" a stable having accommodations for ten or more horses, without fixing a standard or basis on which its discretion is to be exercised; it is an unwarranted delegation of legislative power to the board and therefore void in its entirety. In re Cavanaugh, 313 Mo. 375; Hays v. Poplar Bluff, 263 Mo. 516; St. Louis v. Russell, 116 Mo. 248; Hauser v. Ins. Co., 206 N. Y. 455, 42 L. R. A. (N. S.) 1139; State ex rel. v. Superior Court, 12 A. L. R. 1428, note 1436 et seq. (5) The Municipal Assembly, i. e., the lawmaking power of the city of St. Louis, is without power to vest in any person or persons, board or officer unregulated power at discretion to apply an ordinance to whom they will or refuse to apply it to whom they will. Merchants' Exchange v. Knott, 212 Mo. 636; State ex inf. v. Carlisle, 235 Mo. 259; Yick Wo v. Hopkins, 118 U. S. 368; Sutherland v. Miller, 91 S. E. 993; King v. State, 87 Tenn. 304; Hays v. Poplar Bluff, 263 Mo. 534; Welch v. Casualty Co., L. R. A. 1915E, 708. (6) A duly constituted lawmaking body may make a law to delegate the power to determine facts, conditions or a state of things upon which the law makes or intends to make its own action depend; but a lawmaking body in this State cannot delegate the power to anyone to make laws. State v. Thompson, 160 Mo. 345; Boyd v. Bryant, 35 Ark. 69; In re Cavanaugh, supra.

LINDSAY, C.—It was charged in an information against defendant in error, originally filed in the city court, that defendant had violated the provisions of Sections 2580-2583 of an ordinance of the city of St. Louis, approved April 12, 1918. The manner of violation is charged as follows:

"In the city of St. Louis and State of Missouri, on the 23d day of November, 1922, and on divers other days and times prior thereto, the said Polar Wave Ice & Fuel Company is a corporation and as such is the owner of a building on a certain lot of land situated at 6183-6185-6187 Delmar Boulevard in said city; said defendants were and now are conducting a private stable which has accommodations for more than ten horses at the aforesaid address without first having obtained written permission from the Board of Public Service authorizing them so to do."

From an adverse decision of the city court, defendant appealed to the St. Louis Court of Criminal Correction. The evidence there taken is brief. The city introduced the testimony of a city building inspector, who testified that the defendant owned the property mentioned in the information; that on or about November 23, 1922, he made an inspection of the premises and found twenty-five head of horses in the rear of the stable there; that the stable consisted of an office in the front, wagon yard through the center, and at the rear of the yard a stable for horses, all covered under one roof. An assistant city counsellor for the building commissioner testified that he had examined the record of the Board of Public Service; that defendant made one application for a permit to maintain a stable at the place mentioned; that the application for some reason or other was withdrawn, and that no application had been granted by the Board of Public Service to maintain a stable at 6183-6185-6187 Delmar Boulevard.

The city put in evidence the sections of the ordinance referred to as follows: "Article CVI of the Revised Code or General Ordinances of the City of St. Louis, 1914, being Ordinance No. 30013, Sections 2580-2583:

"Garage permits and permits for Quarries, Kilns, Tanneries, Slaughter Houses, and Soap, Glue, Vitriol, Candle Factories, Distance from Habitations, etc.

"Section 2580. *Stone Quarries, etc.—not to be opened—where.—* Hereafter no stone quarry shall be opened or brick kiln built, or soap factory, slaughter house, glue factory, vitriol factory, tannery, candle factory, livery stable, sales stable, boarding stable, or any other stable, whether for public or private use, having accommodations for ten or more horses, or public or private garage, or place for the storing or caring for five or more automobiles, auto trucks, motor cars, or other vehicles using gasoline or other volatile inflammable liquid or electricity as motive power, or public repair shop for automobiles, auto trucks, or motor cars, shall be opened, built, or established on any lot of ground, or in any building within the city of St. Louis without written permission so to do, having first been obtained from the board of public service. [Ord. 28157, sec. 2.]

"Section 2581. *Same.*—No stone quarry shall hereafter be opened, or brick kiln located or slaughter house, glue factory, vitriol factory, soap factory, candle factory, tannery, rendering factory, or garbage works established on any lot of ground or in any building within a distance of three hundred feet of any building, built and inhabited, or any building used as a place of public assemblage before the opening, locating, or establishing of any of the classes of business above mentioned. [Ord. 28157, sec. 3.]

"Section 2582. *Livery stables, etc.—not to be located—where.*— No livery stable, boarding stable, or any other stable used for public or private purposes having accommodations for ten or more horses shall hereafter be located within fifty feet of any existing inhabited residence, tenement house, or apartment house, nor within one hundred feet of any existing building used  as a place of public assemblage. [Ord. 28157.]

"Section 2583. *Penalty.*—Any person, firm or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than twenty-four nor more than five hundred dollars. Each day such violation exists is hereby made a separate offense. [Ord. 28157, sec. 7.]"

Upon the foregoing evidence the Court of Criminal Correction sustained defendant's motion to dismiss the complaint and discharge the defendant. The essential grounds of the motion were that the ordinance was enacted in violation of Clause 26, Section 53, Article 4, and Sections 4 and 30 of Article 2, of the State Constitution, and in violation of the Fourteenth Amendment of the Federal Constitution. The other grounds of the motion were argumentative, within the constitutional objections, as that, the ordinance delegated legislative authority to the Board of Public Service; put the citizens within the arbitrary power of the board; violated the uniform rule of action applicable to all citizens of the city who might come within its terms; and was not within the powers given to the city by its charter.

It is plain that the information does not charge a violation of Section 2581 of the ordinance, because it does not refer to any of the activities mentioned in that section. It is equally plain that it does not charge a violation of Section 2582, because it does not allege the conducting of a stable forbidden, under the conditions stated in that section.

By Section 2582 of the ordinance stables having ten or more horses cannot be located at all within certain prescribed distances of the respective buildings described in that section. For such, no permit can be granted. The permit required by Section 2580 has reference to only those, and to all those stables having ten or more horses, but not located within the areas prescribed by Section 2582; hence, the

charge made can refer only to a violation of the provision of Section 2580, and to conditions other than those described in Section 2582.

The defendant contends that, even assuming that the ordinance (Sec. 2580) is a valid exercise of the legislative power vested in the city, no case was made against defendant. The more important question raised is that the section mentioned is an unwarranted delegation of power to the Board of Public Service, and that the section is invalid because it prescribes no basis nor standard under which the board can find the existence or non-existence of certain facts and conditions, and apply the facts so found, to the prescribed basis or standard; but that it leaves to the board the power to grant or to refuse a permit at its discretion, a discretion which is unregulated, and may be exercised arbitrarily. The distinction has been drawn frequently between the authority which may be given to an administrative officer or board which is valid, and that which is invalid, dependent upon whether it is attempted to give a power legislative in character.

The distinction is set forth in the quoted sentence found in State v. Thompson, 160 Mo. l. c. 345: "The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." The rule equally applies to ordinances of cities in respect to those matters within the province of municipal legislative authority.

In the extensive annotation upon the subject at hand, found in 12 A. L. R. 1436, in its application to the regulation of an ordinarily lawful business or activity, the rule is stated as follows: "The generally accepted rule is to the effect that a statute or ordinance which vests arbitrary discretion with respect to an ordinarily lawful business, profession, appliance, etc., in public officials, without prescribing a uniform rule of action, or, in other words, which authorizes the issuing or withholding of licenses, permits, approvals, etc., according as the designated officials arbitrarily choose, without reference to all of the class to which the statute or ordinance under consideration was intended to apply, and without being controlled or guided by any definite rule or specified conditions to which all similarity situated might knowingly conform—is unconstitutional and void." In a general way the decisions involving the question of the validity of a granted discretion, recognize the differences in the nature of the subject of the regulation, or the circumstances under which the discretion is to be exercised, as that, sometimes on account of the nature of the subject it is impracticable to lay down a definite or comprehensive rule, or that the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare.

The rulings of this court, rendered under facts peculiar to the given case, while not wholly in harmony, generally recognize the rule as heretofore set forth. The real question here is whether in view of the subject, there is in this ordinance an authority given which is legislative in character. In some of the cases, as in Ex parte Cavanaugh, 313 Mo. 375, there was a grant, in express terms, of authority essentially legislative in character—the authority to prescribe zones, and rules to be observed therein in the movement of motor vehicles, and no general or uniform standard was fixed by the ordinance for the government of the board in so doing. In others, there was in the general ordinance attacked a prohibition against a certain business or activity, except permission therefor be given by proper ordinance, or resolution of the municipal assembly, applicable to the particular person or thing, the passage of such ordinance or resolution itself being made dependent upon consent of a majority of the property owners of a block. [City of St. Louis v. Fischer, 167 Mo. 654.] In others the power of consent was given to an official, and his power again was dependent upon the consent of the majority of property owners, as in St. Louis v. Russell, 116 Mo. 248. In Oakley v. Richards, 275 Mo. 266, the granting or withholding of permission to install a stepoff in the aisle of a moving picture theatre was committed to officials—the superintendent of buildings and fire warden. The grant of power to them apparently expressed no qualification or fixed standard whereby they could withhold or give permission. In some cases, as in Merchants' Exchange v. Knott, 212 Mo. 616, the thing which the defendant was authorized by the act to do—define territory and establish places therein for inspection and weighing of grain—was held to be legislative in character, and the act held invalid because he was given the power, unregulated by any standard or basis fixed by the act.

In City of St. Louis v. Fischer, supra, the decision sustained the validity of the ordinance, in part upon indulgence in the presumption that the city council would not either withhold, or grant permission arbitrarily, or capriciously. In Hays v. Poplar Bluff, the fact that caprice might enter into the exercise of the power granted, was given large weight, and the doctrine announced in the Fischer case was disapproved. See also Merchants' Exchange v. Knott, supra, wherein stress was laid upon the fact that the act contained nothing in itself in restraint of capricious or arbitrary action.

In City of St. Louis v. Kellmann, 243 S. W. 134, a case in Court en Banc, the conviction of a dairyman whose permit had been revoked by the Board of Public Service, and who continued thereafter to sell milk, was sustained. The power to grant the permit, and, to revoke a permit theretofore granted, was given to the Board of Public Service. Clearly, however, there were certain requirements made

317 Mo. Sup.—58.

upon the applicant. There were sections of the ordinance fixing standards for the different grades of milk. "Section 18 of the ordinance provided for a sworn statement as to required facts, to be made by the applicant for a permit." [243 S. W. l. c. 136.] The permit, when granted, was to be kept conspicuously posted at the grantee's place of business. In the opinion it was said at page 137: "It thus appears that the very purpose of the permit was to protect the public. It indicated to the purchasers that the municipality had determined that the holder of the permit could be relied upon for a wholesome quality of the article sold." The almost universal use of milk as an article of food, its peculiar sensitiveness to atmospheric and vegetable influences, and the fruitful sources of disease afforded by impure milk, were evidently borne in mind by the court in considering and sustaining the provision of the ordinance giving to the board the authority to grant, and to revoke, the permit. In State v. Kinsey, 282 S. W. 437, reference was made to the Kellmann case, and to the provisions of Section 21 of the ordinance which had been considered in that case. Referring to said Section 21 of that ordinance, it was remarked, l. c. 438: "It may be that the discretion given the board, in authorizing them to refuse a permit when they think it is inadvisable to grant it, is too broad, if uncontrolled by legislative standards, but in that feature we are not concerned in this case."

Oakley v. Richards, supra, was a damage suit, and the validity of an ordinance of Kansas City regulating the character of buildings occupied for moving-picture shows was involved. It contained the provision: "No steps shall be permitted in any aisle, or in any part of the auditorium floor, except by written permission of the Superintendent of Buildings and Fire Warden." It was sought in that case, to apply to this ordinance, the principle applied in Hays v. Poplar Bluff and like cases. Upon that, it was said, 275 Mo. l. c. 279-80: "An ordinance conditionally restricting the exercise of a right, otherwise exercisable without question, and making that exercise dependent upon the arbitrary will of a city officer, may well be held invalid. On the other hand, matters of detail in enforcing ordinances otherwise valid may be left to designated officials. Again, it is held quite generally that in case the city may prohibit a particular thing, it validly may prohibit it except in case a permit is procured from designated officials. [City of St. Louis v. Fischer, 167 Mo. 662 et seq.; affirmed, Fischer v. St. Louis, 194 U. S. 371.] The arbitrary *exercise* of the discretion would present another question. In this case it is not suggested the city might not lawfully prohibit absolutely inequalities in levels in darkened theatres. It might do so. The case falls within the rule in the cases above cited. [2 Dillon on Municipal Corporations, sec. 598.] The cases cited by appellants fall within the other principle."

The decision in the Oakley case which sustained the validity of the ordinance there considered, notwithstanding the discretion given to the designated officials to permit steps to be placed in the aisles of theatres of that class, was placed, we think, upon the fact that the thing thus subject to permission was a matter of detail in the construction of such building, accompanied, however, by other and unconditional directions or regulations generally applicable to that class of construction, and by which the builder and the supervising officials were to be governed.

The ruling in St. Louis v. Fischer is opposed to the ruling in St. Louis v. Russell. The ruling in Hays v. Poplar Bluff follows the Russell case, and disapproves the ruling in the Fischer case. The opinion in the Oakley case does not mention the Russell case. It follows the Hays case in the announcement that an ordinance conditionally restricting the exercise of a right otherwise exercisable without question, and making that exercise dependent upon the arbitrary will of a city officer, may well be held invalid. It cites the Fischer case as authority for the statement that what a city may prohibit altogether, it may validly prohibit conditionally, or except a permit therefor be procured from designated officials. In the Hays case the question arose upon the construction of a building, an airdome, and involved not a detail of construction, but the essential claim that a wooden building was to be permitted within the limits prescribed by a fire ordinance, under a consent regulated by no standard.

The opinion in the Cavanaugh case gives consideration to all the various cases above mentioned, except St. Louis v. Fischer, to which no reference is made. In the instant case, there is the keeping of ten or more horses in a private stable, which is the act forbidden except by a special permit. In the Russell case there was the keeping of a livery stable. It was there held that a livery stable was not a nuisance *per se,* but might become so through the manner of its keeping. The business or activity here involved is one ordinarily lawful. Nevertheless, it is subject to the police power of the State, and to the city to which the State has given police power. An ordinance passed by the city in the exercise of this power cannot be lightly disregarded. But, there are restrictions upon the exercise of the power. It must be exercised reasonably, and with due regard to certainty, and to uniformity of application according to some proper standard fixed to that end by legislative authority. By the ordinance under consideration the defendant, and others falling within the class defined, must have a permit; but, whether such an one may or may not have such permit, is made to rest in the discretion of the Board of Public Service, uncontrolled, and unmeasured by reference to any test or standard provided by the ordinance. In failure of that, and

within the current of the rulings of this court heretofore made, it lacked validity.

The foregoing has proceeded to a conclusion in advance of consideration of the claim of counsel for the city, that the defendant may not question the constitutionality of the ordinance, because, he has not been refused permission by the board to keep the stable, and therefore there is no evidence that the board was guilty of any arbitrary act against defendant. The evidence heretofore adverted to was, that defendant had made application for a permit, but in the language of the witness had "withdrawn it for some reason or other." Counsel cite under this head State v. Baskowitz, 250 Mo. 82. In that case the defendant had been convicted of violation of Section 4831, Revised Statutes 1909, a part of an act designed to protect the property of manufacturers, bottlers and dealers in mineral water, for loss of their siphons, bottles and boxes. Counsel cite the expression of the court, found on page 89 as follows: "We concede the correctness of the view that Section 4833 is not in anywise involved in this case. This, for the reason urged, that defendant, not having suffered in anywise by reason of its provisions, is not in a position to challenge the constitutionality thereof. He cannot stand far afield and moot questions, to entertain the court withal, but he must have been in a position to be hurt, and to have suffered hurt in somewise before he can be heard to complain. Necessarily, the scope of this inquiry must include also Sections 4829 and 4830. For Sections 4831 and 4832 refer to the aforementioned sections for the defining of the sort, and ownership and designated class of bottles (i. e. 'registered soda and mineral water bottles') the trading and trafficking in which constitutes the misdemeanor denounced. Section 4831 draws its whole force and vitality from the two preceding sections, and in fact makes specific reference thereto. Without the provisions of Sections 4829 and 4830 no offense exists, nor could any prosecution be maintained." This states no more than that a party cannot challenge the constitutionality of a statute which is in nowise an element in the action, and does not affect his rights in that action. No liability was sought to be imposed upon the defendant under the provisions of said Section 4833.

Counsel also cite Gundling v. Chicago, 177 U. S. 183. In that case the plaintiff in error had been convicted of violation of an ordinance forbidding the sale of cigarettes by any person without a license. They call attention to the utterances of the court, found in page 186 as follows: "It seems somewhat doubtful whether the plaintiff in error is in a position to raise the question of the invalidity of the ordinance because of the alleged arbitrary power of the mayor to grant or refuse it. He made no application for a license, and of course the mayor has not refused it. *Non constat,* that he would have

refused it if application had been made by the plaintiff in error. Whether the discretion of the mayor is arbitrary or not would seem to be unimportant to the plaintiff in error so long as he made no application for the exercise of that discretion in his favor and was not refused a license.'' The ordinance of Chicago required the application of the persons desiring a license to be in writing, and to describe the location at which sales were proposed to be made, and it was also to be accompanied by evidence that the applicant, and any and all persons in charge of the business, were persons of good character and reputation, and suitable persons to engage in such business. Inquiry as to these things was required to be made by the Commissioner of Health, and the result of his investigation, the evidence, and his opinion as to the propriety of granting the license, were to be submitted to the mayor, and if the mayor should be satisfied that the person mentioned was of good character and reputation, and a suitable person to be entrusted with the sale of cigarettes, it recited that he ''shall issue the license.'' The ordinance had other provisions, as, that nothing contained in it should be held to authorize the sale of cigarettes containing opium or certain other named ingredients, and it was also provided that if such person should comply with the above-mentioned requirements and make payment in advance to the city collector at the rate of $100 per annum, and give the required bond conditioned for the faithful observance of the laws of the State and ordinances of the city with respect to the sale of cigarettes, the license ''shall be granted.''

The ordinance was held not to contravene any constitutional provision. Clearly, it was not an ordinance which left the granting or the refusal of the license to the unrestrained will of the mayor. What the applicant was required to do to bring himself within its terms as to procuring the license was clearly set forth, and the plaintiff in error had not done that. What was said by the court as above set forth must be considered in the light of the facts otherwise disclosed in the opinion. We have, in examining this question, considered also the opinion of the same court in Wiley v. Sinkler, 179 U. S. 58. Another case noticed by us is Lehon v. Atlanta, 242 U. S. 53. In that case the plaintiff in error had been convicted of violation of an ordinance of the city of Atlanta, providing that no person should carry on the business of a private detective without being first recommended by the Board of Police Commissioners, and taking the oath required of a city detective and giving bond in the sum of $1,000. In that case also the court sustained the validity of the ordinance as a proper exercise of police power. The court said the ordinance did no more than to provide in effect that all persons engaged in the business of private detective should have the sanction of the State, ''have the stamp of the State as to fitness and character, take an oath for

faithful execution of his duties, and give a bond for their sanction."
It was said that this the State might do against its own citizens, and
might do against a citizen of Louisiana, which the plaintiff in error
was. The opinion continues, l. c. 55: "But the ruling of the local
officers in refusing approval of applications of non-residents of
Georgia is urged as a construction of the ordinances or laws of the
State and, it is contended, makes them discriminatory against citi-
zens of other states. Plaintiff in error, however, admits he made no
effort to comply with the ordinances. The Court of Appeals, there-
fore, was of opinion that, whether certain sections of the Penal Code
of the State did or did not exclude citizens of other states from en-
gaging as private detectives, plaintiff in error was deprived of no
constitutional right, for 'as to him the ordinances were not construed
at all.' In other words, that he had not asserted a right, and in the
absence of assertion, could not have it judicially passed on. We con-
cur in the ruling. It is within the principle of Gundling v. Chicago,
177 U. S. 183, 44 L. Ed. 725. To complain of a ruling one must be
made the victim of it. One cannot invoke, to defeat a law, an appre-
hension of what might be done under it and which, if done, might
not receive judicial approval." In that case it is apparent from
what is said in the opinion as to the ordinance, and irrespective of
the question of citizenship in another State, it was necessary for any
applicant for license as a private detective, to submit proof to the
city police department of his fitness and character for authority to
pursue that kind of work. In that respect the discretion committed
to the police department was one measured by a standard of require-
ments, and when the plaintiff in error would have shown that he
met the prescribed requirements of fitness in character and repu-
tation, he came into the class of those entitled to receive a license.
In the ordinance here invoked, there is no requirement that the ap-
plication shall contain any statement of qualification to be inquired
into by the board, or upon which the board shall exercise its discre-
tion in view of the evidence offered. Here, the defendant by open-
ing a private stable within the class mentioned in Section 2850 of
the ordinance, was directly and immediately affected by its provi-
sions, which made no requirement of a showing he was in the class
entitled to a permit. The rule applicable here is stated in Cooley's
Constitutional Limitations (8 Ed.), page 382, as follows: "When a
statute is adjudged unconstitutional, it is as if it had never been.
Rights cannot be built up under it; contracts which depend upon it
for their consideration are void; it constitutes a protection to no
one who has acted under it, and no one can be punished for having
refused obedience to it before the decision was made. And what is
true of an act void *in toto,* is true as to any part of an act which is

found to be unconstitutional, and which, consequently, is to be regarded as having never, at any time, possessed any legal force.''

Counsel for defendant in error urge that no case was made against defendant, assuming that the ordinance (Sec. 2580) is a valid exercise of the legislative power vested in the city. They make this contention upon the ground that the ordinance is by its terms prospective in operation; that there is no evidence as to when the ordinance became operative, or when defendant in error ''opened, built or established'' its stable; that defendant is charged with *conducting* a private stable, and the board was not given power to grant written permission to defendant or any other person to conduct a stable.

In view of what we have heretofore said upon the controlling question, we do not think a discussion of the contention last mentioned is necessary; and for the reasons given, the judgment is affirmed. *Seddon, C.,* concurs; *Ellison, C.,* not sitting.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.