STATE OF MISSOURI at the relation of LUCILE BLUFORD, Appellant, v. S. W. CANADA, Registrar of the University of Missouri.—153 S. W. (2d) 12.

Division One, July 8, 1941.

Rehearing Denied, July 25, 1941.

*Sidney R. Redmond, Henry D. Espy, John A. Davis* and *Charles H. Houston* for appellant.

*Rubey M. Hulen, Kenneth Teasdale* and *William S. Hogsett* for respondent.

 CLARK, J.—Appellant filed a petition in the Circuit Court of Boone County praying for a writ of mandamus to compel the registrar of the University of Missouri to admit relator as a student in the School of Journalism of the State University. On final hearing the circuit court quashed the alternative writ and denied a permanent writ. Relator appealed.

Appellant is a negro, citizen of Missouri, about thirty years of age and for several years has resided in Kansas City. She graduated nine years ago at the University of Kansas with an A.B. degree in journalism. Since then she has been engaged in newspaper work and for several years has been, and now is, managing editor of the Kansas City Call, a newspaper published by negroes and having an extensive circulation principally among the members of that race.

Appellant applied for admission to the School of Journalism in January, 1939, and again in September, 1939. The respondent registrar refused her admittance on both dates for the sole reason that she is a negro, it being undisputed that she is otherwise eligible.

Since 1865 this State has maintained free public schools for negroes and it has been, and now is, the public policy of Missouri, established by our Constitution and statutes, to segregate the white and negro races for the purpose of education in the common and high schools of the State. This policy also applies to our institutions of higher education. That question was fully discussed and decided by this court in State ex rel. Gaines v. Canada, 342 Mo. 121, 113 S. W. (2d) 783, wherein we upheld the action of the University in refusing admission of a negro to the law school solely because of his race.

In 1866 Lincoln Institute was incorporated and established in St. Louis as a school for negroes. In 1869 it was moved to Jefferson City. Ten years later it was taken over by the State and has since been maintained as a state school. By liberal appropriations it has been expanded and enlarged under the name of Lincoln University, and required by law to "afford to the negro people of the state opportunity for training up to the standard furnished at the State University of Missouri." For many years each session of the General Assembly has appropriated funds "for the payment of reasonable tuition fees of negro residents of the State of Missouri at the University of any adjacent State where the board of curators of Lincoln University shall have arranged for the attendance of such students to take any course or to study any subjects provided for at the State

University of Missouri, and which are not taught at Lincoln University.'' Appellant was a beneficiary of this fund and for three years received tuition aid from the State of Missouri at the University of Kansas, a course in journalism not then being furnished at Lincoln University.

On certiorari, the Supreme Court of the United States reversed our decision in the Gaines case, supra, holding: that Gaines ''was entitled to be admitted to the law school of the State University in the absence of other and proper provision for his legal training within the State;'' that a refusal to so admit him constituted a denial by the State of the equal protection of laws in violation of the Fourteenth Amendment to the Federal Constitution; and that the constitutional requirement was not fulfilled by the provision for tuition aid in some school outside Missouri. [State ex rel. Gaines v. Canada, 305 U. S. 337, 59 Sup. Ct. 232, 83 L. Ed. 208.]

Appellant contends that the decision of the Supreme Court of the United States in the Gaines case settles all questions of law arising in the instant case and entitles her to a peremptory writ of mandamus compelling the University to admit her to the School of Journalism.

However, respondent urges a number of reasons for denying relief to appellant which did not appear in the Gaines case and which we state in our own words as follows: (1) that the suit is not prosecuted in good faith for the purpose alleged in the alternative writ; (2) that the respondent registrar is a mere subordinate of the Board of Curators and the members of the Board are necessary parties; (3) that, by a statutory amendment since the decision in the Gaines case, appellant has an adequate remedy by mandamus against the Board of Lincoln University to compel the establishment of a school of journalism; (4) that appellant has made no demand upon Lincoln University for instruction in journalism.

(1) On the question of good faith, respondent introduced evidence to show: That appellant and her counsel are members of the National Association for Advancement of Colored People, an organization with headquarters in New York; that this action is being encouraged and financed, at least in part, by that organization; that this is one of a number of suits brought in several states to break down the policy of separate schools for white and colored persons; that this is the second suit of that nature instituted in Missouri, the Gaines case being the first; that after the decision in the Gaines case, the appellant, by editorials and appearance before a legislative committee, opposed an appropriation for new departments at Lincoln University.

Respondent argues from such evidence, and the inferences to be drawn from certain correspondence between appellant and other members of the National Association for Advancement of Colored People, that the real motive of appellant is not to obtain instruction in journalism but to destroy our policy of segregation. In our view, if

appellant has the legal right and actually expects to attend the University, her motives for doing so are immaterial. On the other hand, since the right if any is a personal right, if appellant does *not* expect to attend, she should not be granted our writ merely to open the doors of the University for other members of her race. The only evidence which we find in the record on this particular phase of the case is a statement contained in a letter from relator to one of her attorneys. This letter is dated several months prior to the institution of the suit and, after stating that appellant is not sure that her employer will grant her a leave of absence, states: "If he doesn't and I can't attend for a whole semester (if they admit me), do you think I should enroll anyway and attend classes for a few days? Or should I wait until fall when I might be able to get leave?" On cross-examination appellant admitted that by attending classes "for a few days" she hoped to pave the way for other negroes, but she also insisted that she hoped to get leave of absence from her employment and to attend the School of Journalism. We think there is no substantial evidence to convict appellant of bad faith in law and that this contention must be resolved against respondent.

(2) The respondent registrar is a subordinate officer, acting under the lawful rules of the Board, but, it being undisputed that relator was otherwise eligible for admission, it was respondent's duty to admit her unless his refusal can be justified on the ground of her race. If the law did not bar her because of her race, then it was the mandatory duty of respondent to admit her even in the face of a contrary ruling of the Board. We hold that it was unnecessary to join the Board of Curators as parties. [Tape v. Hurley, 66 Cal. 473, 6 Pac. 129.]

(3, 4) When the Gaines case was before the Supreme Court of the United States, a Missouri statute then in force (Sec. 9618, R. S. Mo. 1929, Mo. Stat. Ann., sec. 9618, p. 7327) read as follows:

"The board of curators of the Lincoln University shall be authorized and required to reorganize said institution so that it shall afford to the negro people of the state opportunity for training up to the standard furnished at the state university of Missouri whenever necessary and practicable in their opinion. To this end the board of curators shall be authorized to purchase necessary additional land, erect necessary additional buildings, to provide necessary additional equipment, and to locate, in the county of Cole the respective units of the university where, in their opinion, the various schools will most effectively promote the purposes of this article."

The Supreme Court held that Section 9618 did not impose a mandatory duty upon the Board of Curators to establish a law school at Lincoln University, but imposed upon them the discretionary duty to establish such school "whenever necessary and practicable in their opinion."

Since the mandate in the Gaines case came down, the General Assembly has repealed and re-enacted Section 9618 (now Section 10774, R. S. 1939) to read as follows:

"The Board of Curators of the Lincoln University shall be authorized and required to reorganize said institution so that it shall afford to the negro people of the state opportunity for training up to the standard furnished at the State University of Missouri. To this end the board of curators shall be authorized to purchase necessary additional land, erect necessary additional buildings, to open and establish any new school, department or course of instruction, to provide necessary additional equipment, and to locate the respective units of the university wherever in the State of Missouri in their opinion the various schools will most effectively promote the purposes of this article."

The statute, as now worded, does not in terms vest any discretion in the Board of Lincoln University to determine the necessity or practicability of opening new departments. Yet we think, of necessity, a measure of discretion remains in the Board to allocate the funds at its disposal to departments for which great demand exists, if such funds are insufficient to supply all departments of learning furnished at the University of Missouri.

In this case appellant made no demand upon Lincoln University to establish a school of journalism or to furnish her instruction in that subject. The alternative writ does not allege any such demand. It states that there was no course of journalism at Lincoln University and that the ██ President of that school, on September 28, 1939, informed appellant that such course must await time for study and report by the President and faculty. After appellant had twice unsuccessfully applied for admission to the University of Missouri, she made inquiry (but not demand) to the President of Lincoln about a course of journalism in that school. This was on September 9, 1939. Prior to that time and as early as June, 1939, the Lincoln Board had under consideration the establishment of such a course. The matter was considered at several meetings of the Board. A committee was appointed, made investigation and reported. The minutes of the Board dated January 16, 1940, state that "the equipment for certain aspects in the technical layout for such a department is already completed," and a resolution was unanimously adopted which, after stating that it was impossible at that time to secure competent instructors, provide space and establish such department with the funds then in the budget, continued as follows: "Whereas, it is the unanimous opinion of the members of the Board of Curators in attendance at this meeting that it is advisable to establish a School of Journalism at the earliest practical date; therefore, be it resolved by the Board of Curators that work be started now to establish a School of Journalism at Lincoln University by February 1, 1941."

This case was instituted on October 15, 1939, tried in the circuit court in February, 1940, taken under advisement and judgment rendered May 31, 1940.

Appellant argues that, by making investigation and preparation for the opening of a school of journalism, the Lincoln Board treated appellant's inquiry as a demand. We do not so interpret the record, but, even so, the action of the Board did not amount to a refusal. On the contrary, after receiving appellant's inquiry, the Board continued the preparations which it had already begun and unanimously adopted the resolution already mentioned to open a course in journalism in February, 1941. We assume that the Board adopted this resolution in good faith with the intention of establishing such course. Four of the nine members of the Board are negroes and members of the National Association for the Advancement of Colored People. Of course, as this case was tried prior to February, 1941, the record does not, and could not, disclose whether Lincoln University was ready to commence instruction in journalism on that date. Nor can we know whether the preparations to start the course would have been hastened if appellant had made demand on the Lincoln Board.

Appellant says that our second decision in the Gaines case "shows that a prior demand by appellant on Lincoln University for graduate work in journalism is not a condition precedent to this action against the registrar of the University of Missouri, the only existing institution where graduate courses in journalism are offered;" and further, "that the burden is not on the citizens to force the State to create the segregated facility, but the burden is on the State at its peril to establish the new segregated facility on notice that a demand has been made on the only existing facility theretofore established."

The second decision in the Gaines case, referred to by appellant, was handed down by this court on August 1, 1939, after the mandate came to us from the Supreme Court of the United States. [State ex rel. Gaines v. Canada, 344 Mo. 1238, 131 S. W. (2d) 217.]

Neither of the issues raised by the quoted portions of appellant's brief, to-wit, the necessity for a demand on the Lincoln Board and the duty of the State to compel Lincoln University to establish the desired course, was decided by the Supreme Court of the United States or by this court.

The Supreme Court, speaking through Mr. Chief Justice HUGHES, based its decision on Section 9618, supra, as it then read. It was expressly stated in the opinion that the decision in the State court did not turn on a procedural question, and that in our first opinion we "did note that petitioner had not applied to the management of Lincoln University for legal training. But, as we have said, the state court did not rule that it would have been the duty of the curators to grant such an application, but on the contrary took the view, as we understand it, that the curators were entitled under the state law to

refuse such an application and in its stead to provide for petitioner's tuition in an adjacent State." Earlier in the opinion the Supreme Court had pointed out that the Fourteenth Amendment requires Missouri to furnish equal educational facilities *within the State*, and that a provision for tuition aid in an adjoining state does not satisfy the requirement. That court also said, in effect, that because the Lincoln Board had the alternative of providing ■■■ tuition in other States so long as it should find it unnecessary and impracticable to provide equal facilities within the State, "we cannot regard the discrimination as excused by what is called its temporary character."

In our second decision in the Gaines case, we took judicial notice of the change in the statutes, since our first decision, by the elimination of the power of the Lincoln Board to determine the necessity or practicability of opening new departments, and remanded the case to the circuit court to determine, as a fact, whether equal facilities for legal education would be available at Lincoln University at the commencement of the next school term.

In addition to this mandamus proceeding in the State court, appellant brought a suit for damages in the Federal District Court against the registrar, based on his refusal to admit her to the Missouri University. That case was heard and an opinion rendered by District Judge COLLET on April 6, 1940. [Bluford v. Canada, 32 Fed. Supp. 707.] The opinion discussed both the opinion of Mr. Chief Justice HUGHES and our second opinion in the Gaines case and pointed out that change in Section 9618 since our first decision. The opinion says:

"The petition does not allege any demand by plaintiff or any other negro for instruction in journalism at Lincoln University, nor does the petition allege that the governing body of Lincoln University had ample time to furnish those facilities after plaintiff first sought admission to the University of Missouri. The omission is not inadvertent. On oral argument counsel, with complete frankness, stated plaintiff's position to be that although plaintiff should be the first to request the desired instruction she is entitled to it at the University of Missouri instanter, if it be now furnished there to white students and is not immediately available at Lincoln University. If her position is well taken no allegation of advance notice to the authorities of Lincoln University of her desire for the instruction demanded is necessary. On the other hand, if the State be entitled to an opportunity to furnish the instruction at Lincoln University before it or its administrative officers (such as the defendant), be convicted of violation of the equal protection clause, then the petition should be amended or defendant's motion sustained."

The court approves the conclusion reached by us in our second opinion that the opinion of the Supreme Court did not deprive the State of a reasonable opportunity to provide facilities, demanded for the first time, before it abrogates its established policy of segregation,

and points out that if plaintiff's contention be correct, that policy must for practical reasons be abrogated at least during the period necessary for the establishment of the demanded facilities at Lincoln University. Then the court says the language of the Supreme Court does not imply such a requirement and that "since the State has made provision for equal educational facilities for negroes and has placed the mandatory duty upon designated authorities to provide those facilities, plaintiff may not complain that defendant has deprived her of her constitutional rights until she has applied to the proper authorities for those rights and has been unlawfully refused. She may not anticipate such refusal."

It is the duty of this court to maintain Missouri's policy of segregation so long as it does not come in conflict with the Federal Constitution. It is also our duty to follow the interpretation placed on the Federal Constitution by the Supreme Court of the United States. The Supreme Court has many times approved the policy of segregation. Mr. Chief Justice HUGHES, citing authorities, again approved the policy in the Gaines case, provided substantially equal facilities for colored persons be furnished within the State. Since that opinion, Missouri, by legislative enactment, has ordered that equal facilities be provided within her borders and has designated the Board of Lincoln University as the proper authority to furnish such facilities. The duty of the Lincoln Board to open new departments on proper demand is now mandatory. True, the Board cannot operate without funds. If its funds are insufficient to provide all courses taught at Missouri University, the Board should allocate its funds to the courses most needed. But that very fact entitles the Board to have a demand made upon it before being required to open a new department, for surely the Board is not required to maintain departments for which there are no students. We think also that the Board is entitled to a reasonable time in which to open a new department after demand is made. If, upon proper demand, the Lincoln Board had refused to establish a course in journalism within a reasonable time, or had informed appellant that it was unable to do so, appellant would ▮ have been entitled to admission to that course in the Missouri University. The proof does not make that kind of a case. It shows no demand upon or refusal by, the Lincoln Board. On the contrary, it shows a desire and effort by the Board to establish the course by February 1, 1941, which, if accomplished, would have delayed appellant for two semesters, reckoned from the date of suit, or for one semester reckoned from the date of trial. For that matter, appellant might have avoided all delay in receiving instruction by making demand on Lincoln University a reasonable time in advance of the opening of the school term. We do not think that is an unreasonable requirement. The purpose to attend school is not often the result of a sudden impulse or happening, but is usually planned well in advance. That is true of

appellant as shown by her own testimony. She had formed the purpose to take a graduate course in journalism many months before she made her application, but her purpose was to take it at Missouri University, not at some other school in Missouri.

When the Gaines case came before this court for the second time, we were confronted with this situation: under the law as it existed when Gaines made his application to Missouri University, he was entitled to admission, but, because of a change in the statute, we could not say that he would still be entitled to admission at the beginning of the next school term. Therefore, we remanded the case so that the trial court might determine whether, under the changed circumstances, the writ of mandamus should be made permanent.

We are now faced with a different problem. Here, because of the lack of a previous demand on Lincoln University, appellant was not entitled to admission to Missouri University at the time of her application and respondent committed no wrong in denying her application. Therefore, we are not authorized to make the writ permanent or to remand the case for determination of appellant's right to admission at the beginning of the next school term.

The present session of the General Assembly will no doubt shortly adjourn. The Lincoln Board will then know the amount of funds at its disposal and be in position to determine whether and when a journalism course can be instituted at that school. If, upon proper demand and after a reasonable time, the desired course is not available at Lincoln, appellant will be entitled to take the course at Missouri University.

For the reasons stated the judgment is affirmed. All concur.