STATE of Missouri ex rel. CONTINENTAL
OIL COMPANY, a Corporation,
Respondent,

v.

Robert B. WADDILL, as City Engineer of
the City of Independence, Missouri, a
Municipal Corporation, Appellant.

No. 46714.

Supreme Court of Missouri,

Division No. 1.

Nov. 10, 1958.

Motion for Rehearing or to Transfer to
Court en Banc Denied Dec. 8, 1958.

John F. Thice, Gilbert R. Titus, Rufus Burrus, Independence, for appellant.

George H. Gangwere, Leo E. Eickhoff Jr., Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for respondent.

VAN OSDOL, Commissioner.

This is a proceeding in mandamus instituted in the Circuit Court of Jackson County at the relation of Continental Oil Company, a corporation, to compel the respondent, City Engineer of the City of Independence, to issue relator a permit for building a filling station on Lot One of Country Club Addition to the City of Independence. The relator had averred the unconstitutionality of ordinances and of the action of respondent City Engineer in revoking a permit which had been issued to relator, and in denying subsequent applications.

The trial court issued its alternative writ and, after trial, issued its peremptory order

commanding the immediate issuance of a permit to relator. Respondent City Engineer has appealed.

Country Club Addition was platted by Master Craftsmen, Inc., July 7, 1941. Lot One of the addition is an irregular triangular tract at the southwest corner of the intersection of Sheley Road and Crysler Avenue. The lots of the platted tract were designated as residential lots, "except Lot One (1), which is reserved for business." The recorded platting also contained a restrictive provision—"No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

January 26, 1952, relator had entered into an option to purchase part of Lot One, the option to be surrendered and the consideration paid therefor to be returned if a permit from the city could not be obtained. March 27, 1952, relator applied to respondent City Engineer for a building permit, and permit No. 5838 was issued April 2, 1952, the permit providing the work of construction was to be completed within one year. July 23, 1952, relator notified the vendor-optionor in the option to purchase agreement that relator, purchaser-optionee, was exercising the option, and a conveyance was executed, the $17,500 purchase price paid and the purchase consummated September 15, 1952. But, October 8, 1952, respondent advised relator by letter that the city council had revoked permit No. 5838 and that relator might reapply through the city council. The City Planning Committee had recommended to the council that the permit be revoked; the committee had reported to the council that protesters were almost unanimous "against such filling station at this location."

August 30, 1955, relator filed duplicate application with the City Engineer and the city council for the reinstatement of permit No. 5838, or for the issuance of a new permit. But, September 13, 1955, relator was advised by letter from the city clerk that the application was denied by the council "in view of more than 300 protests of citizens." When the latter application was filed, the original application of 1952 was taken from city's files and returned to relator.

There was evidence that subsequently there was a movement for rezoning Lot One for residential use. The movement failed; and August 1, 1956, relator again reapplied, and the minute of the council of August 27th shows the application was denied.

By Chapter 2, Article I, Section 47, Revised Ordinances of Independence, 1931, it was provided that any person desiring to erect a building or improvement or repair any building "shall, before commencing work * * * procure a permit therefor." And by Section 49, as amended by Ordinance No. 9374, April 25, 1933, it was provided as follows,

"Applications for building permits shall be made to the City Engineer and shall state generally the kind and character of building or improvement contemplated, the materials to be used, its intended site or location, and the probable time to be occupied in its erection, which time may be extended by the City Engineer for good cause together with a fair estimate of the cost thereof, and shall be signed by the owner, his agent or contractor. The applicant shall thereupon pay to the City Collector the proper fees for the building or improvement named in said application, taking his receipt therefor, and upon presenting the Collector's receipt and application to the City Engineer, a building permit shall be issued, signed by the City Engineer and limited for the time stated in the application. That all applications for building permits for the construction of commercial business structures, gasoline filling stations, business block, or any other building or structure designed for manufacturing or industrial purposes, now pending or hereafter applied for shall be referred to the City Planning Committee, and

*no building permit shall be issued before the application therefor shall have been approved by the City Planning Committee.* Provided however, that no permit herein referred to shall be given or granted by the Engineer or the City Planning Committee if said property has theretofore been condemned, as provided by the laws and ordinances of the City of Independence, unless special permits be obtained from the City Council." (Our italics.)

By Ordinance No. 13120, Zoning Ordinance, enacted December 18, 1950, Lot One of Country Club Addition was zoned in District "D", local business district, which district included "filling stations, provided all storage tanks for gasoline shall be below the surface of the ground." Section 22 of Ordinance No. 13120 provided that it was the duty of the City Engineer to enforce the provisions of the ordinance "and to refuse to issue any permit for any building or structure or for the use of any premises, which would violate any of the provisions hereof * * *."

Ordinance No. 13679, Building Code, enacted June 29, 1953, parenthetically noted that the term "Building Commissioner," and other terms designating particular officers referred to in the ordinance, "shall mean the City Engineer until such time as these specific appointments are made." By Section 201 of Ordinance No. 13679, it was provided that no person shall "construct any building * * * without first obtaining a building permit therefor from the Building Commissioner"; any person desiring a building permit "shall file with the Building Commissioner an application therefor"; and by Section 202 of the Ordinance it was provided that the "application, drawings and specifications filed by an applicant for a building permit shall be checked by the Building Commissioner, and if found to be in conformity with the requirements of this Code and all other laws or ordinances applicable thereto, the Building Commissioner, shall, upon receipt of the required fee, issue the building permit."

This proceeding in mandamus was instituted September 26, 1956. As stated, the trial court, after trial, directed the issuance of its peremptory writ. The trial court found (1) that relator had met all requirements of ordinances requisite to the issuance of a permit; (2) that the granting of such permit was not a matter of discretion in respondent City Engineer, but was his plain and clear ministerial duty; (3) that Ordinance No. 9374 was unconstitutional and exceeds the statutory powers of the city; (4) that Ordinance No. 9374 was repealed by Ordinances Nos. 13120 and 13679; (5) that relator, in acquiring the portion of Lot One, relied on building permit No. 5838 and thereby acquired a vested right, and the permit could not be lawfully revoked thereafter; and (6) that the permit No. 5838 was unlawfully revoked and the further applications of relator unlawfully denied.

Respondent City Engineer, appellant herein (but for convenience we shall refer to the parties herein as designated in the trial court), assigns that the trial court erred in ordering the peremptory writ. It is contended that mandamus is a discretionary writ and ought not to issue in doubtful cases, or when it would collaterally decide issues of importance to persons not parties to the proceeding; that the peremptory writ should have been denied because city and the mayor and councilmen were necessary parties and were not joined as parties respondent; that Ordinance No. 9374 is in full force and effect, since it was not expressly or by implication repealed by Ordinances Nos. 13120 and 13679; and that the power to issue or withhold a building permit under Ordinance No. 9374 was reserved in the city council and "when it (the council) acted in directing the revocation of the permit which it had not approved, it acted legislatively" and respondent could not question such legislative acts, but could only act in the issuance of permits as authorized by the council. It is argued that the legislative body, the city

council, had, in the first instance, the discretionary power to determine the conditions, if any, under which filling stations were to be permitted in certain districts and the legislative body simply retained and properly exercised the power and discretion which it initially had.

■ Upon this appeal we have the responsibility of reviewing the evidence, of forming our own conclusions on the law and the evidence, and of deciding the case as justice requires. State ex rel. Toliver v. Board of Education of City of St. Louis, 360 Mo. 671, 230 S.W.2d 724.

We first direct our attention to Ordinance No. 9374 amending Section 49 of Chapter 2, Article I of the Revised Ordinances of 1931. It is noted that Ordinance No. 9374 required that signed applications for building permits shall be made to the City Engineer, the applications to state generally the materials to be used, site, time for construction, and a fair estimate of cost. The payment of proper fees was required; and upon the presentation of the application and the receipt for fees to the City Engineer "a building permit shall be issued, signed by the City Engineer" and limited for the time stated in the application. The foregoing was followed by the provisions requiring applications for the construction of business and manufacturing structures, including gasoline filling stations, to be referred to the City Planning Committee, and "no building permit shall be issued before the application therefor shall have been approved by the City Planning Committee."

■ In State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S.W.2d 296, the challenged portion of an ordinance provided that when the (smoke) commissioner of St. Louis "shall have found the issuance or continuance of any permit will not be consistent with the public welfare, he may disapprove any application or revoke such permit with the approval of the board of public service." The ordinance was held unconstitutional as denying due process in failing to set up or provide any standard or guide, and as not applicable to all alike under the same circumstances. Const. Art. I, § 10, V.A.M.S.; Constitution of the United States, Fourteenth Amendment; Lux v. Milwaukee Mechanics' Ins. Co., 322 Mo. 342, 15 S.W. 2d 343; City of St. Louis v. Polar Wave Ice & Fuel Co., 317 Mo. 907, 296 S.W. 993, 54 A.L.R. 1082; Hays v. City of Poplar Bluff, 263 Mo. 516, 173 S.W. 676, L.R.A.1915D, 595. See also Fairmont Inv. Co. v. Woermann, 357 Mo. 625, 210 S.W.2d 26, 31, wherein this court again approved the quotation from McQuillin on Municipal Corporations quoted in the Caulfield case— "Notwithstanding express power may exist to enact, the ordinance must provide a uniform rule of action; it must contain permanent legal provisions, operating generally and impartially, for its enforcement cannot be left to the will or unregulated discretion of the municipal authorities or any officer of the corporation." The general rule is also recognized in Lux v. Milwaukee Mechanics' Ins. Co., supra, and restated in State ex rel. Ludlow v. Guffey, Mo.Sup., 306 S.W.2d 552, that any ordinance which attempts to clothe an administrative officer with arbitrary discretion without a definite standard or rule for his guidance, is an unwarranted attempt to delegate legislative functions to such officer, and for that reason is unconstitutional. The exceptions to the general rule are stated as in situations and circumstances where necessity would require the vesting of discretion in the officer charged with the enforcement of an ordinance, as where it would be impracticable or impossible to fix a definite rule or standard or where the discretion vested in the officer relates to enforcement of a police regulation requiring prompt exercise of judgment. As in the case of State ex rel. Ludlow v. Guffey, supra, so it is here, the instant case comes within neither of the stated exceptions.

■ We hold the clause which we have italicized in quoting Ordinance No. 9374 is unconstitutional and void. State ex rel. Triangle Fuel Co. v. Caulfield, supra.

· Having decided the stated clause of Ordinance No. 9374 is void, the questions of whether the ordinance was repealed by the Zoning Ordinance or Building Code, and whether relator acquired a vested right which could not be revoked by virtue of relator's purchase of the property in reliance upon building permit No. 5838 are not of decisive significance.

■ We now attend the respondent's contention that the city council had reserved in itself the power to issue a permit and there need be no standard or rule for the guidance for the council because the legislative body, the city council, had in the first instance the power and discretion of determining the conditions under which a filling station was to be permitted. As we understand respondent's brief, this contention is made in support of the asserted reserved power of the council notwithstanding the incidence of Ordinance No. 9374, and also as applicable in empowering the council lawfully to issue or revoke permits notwithstanding the incidence of the quoted provisions of the Zoning Ordinance and Building Code. Respondent had relied on State ex rel. Ludlow v. Guffey, supra, for support of the contention. We think respondent has not completely analyzed the Guffey case.

In the Guffey case Section 13 of the Zoning Ordinance of Webster Groves provided that the council might by special permit authorize the location of certain buildings or uses in any district from which they were otherwise prohibited by the ordinance. As pointed out in the opinion, the city council had the power and discretion in the first instance to prescribe in the ordinance the exact conditions under which a special permit would be issued or denied for a particular use and in a particular district, but the council did not exercise that power. On the contrary, the council chose to delegate (to itself), by Section 13, a discretionary enforcement power. But there was a sufficiently definite standard or rule prescribed in the ordinance to guard against the arbitrary and uncontrolled exercise of discretion by the city council. Section 13 provided for a public hearing and a determination, upon evidence and facts adduced, whether a filling station at the location in "C commercial" would or would not promote the "health, safety, morals, or general welfare" by determining specifically whether the location and use would or would not affect "the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare." In our case the council did not delegate to itself any administrative duty in the issuance of a permit (except in a case where the property "has theretofore been condemned" as provided in the last clause of Ordinance No. 9374, which clause or proviso is not involved here). The administrative duty in our case was vested in respondent and was not discretionary but purely ministerial as to the issuance of a permit upon respondent's determination that the proposed structure and use, as such, were in compliance with ordinances. It is not contended by respondent that relator had not complied with the requirements of the several ordinances with respect to plans and specifications of its proposed structure, or that the contemplated use of the portion of Lot One was in any way not in compliance with the regulatory requirements of the ordinances, or that relator had not paid or tendered the payment of proper fees as required.

There is little to be soundly said in support of the contention and argument that, in the exercise of discretion in this extraordinary remedial action, mandamus, a court should deny issuance of the peremptory writ in this case. It is urged that the relator's representatives knew, before relator's exercise of the option to purchase the property, of the objec-

tions of property owners and residents in the vicinity to the use of Lot One as a site for a filling station. And, as an additional reason for the exercise of discretion in denial of the peremptory order, it is argued that relator acquiesced in the city council's revocation of permit No. 5838 in October, 1952, and no further action was taken by relator until the subsequent applications were filed in 1955 and 1956, and so, "because of laches and acquiescense in the refusal to grant the permit," a court ought to exercise its discretion in refusing the writ. But, we note it is not pointed out in what respect the asserted acquiescence and delay, which it seems was in fact occasioned by a misconception of relator's right and respondent's duty, affected respondent to his disadvantage, or circumscribed and excused him from the performance of his official ministerial duty. The facts that third persons, property owners of the vicinity, objected to the issuance of a permit and to the use of relator's property for a filling station, and that there were restrictions of record against noxious or offensive trades and activities on any lot in Country Club Addition, did not justify respondent's failure in the performance of his ministerial duty, or justify the city council's actions in directing the revocation of or in denying a permit to relator, which duty had been vested by the city council by ordinance in respondent. As we have observed, the council had not reserved the power in itself to issue a permit; and the council had not legislatively prescribed as a condition to granting a permit that property owners, or a percentage of them, within a specified area should consent to the use of the property as proposed. Ordinances requiring the consent of a stated percentage of affected property owners or residents to the erection of a filling station have been held void as an unconstitutional attempt to delegate legislative power, although, it has been written, there is a decided conflict of authority as to the validity of such an ordinance. Vol. 7,

McQuillin, Municipal Corporations, 3d Ed., § 24.348, pp. 254–255. In Hays v. City of Poplar Bluff, supra, 263 Mo. 516, 173 S. W. 676, 677, one of the grounds for holding the ordinance (see Section 315 thereof) void was the requirement therein that the application for the special permit to erect a wooden structure within the fire limits should "be accompanied by the written consent of all persons owning property within the block in which the proposed building is to be erected or placed." It was said that this amounted to a delegation of the legislative power of the city to the property owners.

As we have analyzed the provisions of Ordinance No. 9374 (the void italicized clause having been considered deleted), the Building Code and the Zoning Ordinance, the duty of the issuance of a permit for a gasoline filling station by the Building Commissioner and the City Engineer (these offices in the several ordinances being in effect the same office vested in one person, respondent) is ministerial, when the plans and specifications of the proposed building and proposed use are in compliance with the requirements of the stated ordinances, and the requisite fee is paid. It was not for respondent to raise the question, in the performance of his duty (or now to inject the issue as a defense in this mandamus proceeding) whether, because of the restriction in the original platting of Lot One, quoted supra, the relator was precluded in its proposed filling-station use of the property. The issues of the validity and the application of the restrictive provision to the activity and use contemplated by relator were matters of concern as between relator and other persons, not parties to the action. They were not issues to be properly raised in this case, but were subjects of an appropriate action wherein the rights and obligations of the interested parties may be tried and determined according to the general law governing such matters. State ex rel. Folkers v. Welsch, 235 Mo.App. 15, 124 S.W.2d 636.

■■ It is true as respondent contends that in granting or denying mandamus a court may exercise its discretion; but the court's discretion may not be arbitrary— it must be judicial. In the instant case, wherein we are treating with ordinances, the products of the exercise of the legislative function, we have the opinion that relator established a clear right to the issuance of a permit pursuant to ordinances duly enacted, which ordinances contained no conditions to the issuance of permits such as respondent urges upon us to consider for denying the writ on the ground of judicial discretion. To deny the writ on these grounds would be, in our opinion, an assumption of legislative prerogatives by the judiciary. State ex rel. Bank of Nashua v. Holt, 348 Mo. 982, 156 S.W.2d 708; State ex rel. Jones v. Cook, 174 Mo. 100, 73 S.W. 489; 34 Am.Jur., Mandamus, § 41, p. 835.

We agree with the trial court's findings that relator had met all requirements of ordinances requisite to the issuance of a permit, and that permit No. 5838 was unlawfully revoked and subsequent applications were unlawfully denied.

■■ The contention that the peremptory order should be denied because city and its mayor and councilmen were not joined as parties respondent is ruled adversely to respondent. Under modern practice, in a mandamus proceeding, the usual rule is to name as respondent or respondents that member or those members of the municipal government whose duty it is to perform the acts of the municipality. 55 C.J.S. Mandamus § 252 subd. b., pp. 472–473; State ex rel. Associated Holding Co. v. City of St. Joseph, 237 Mo.App. 399, 169 S.W.2d 419. Respondent City Engineer was the only city officer upon whom the ministerial duty rested to issue the permit and he was a proper, necessary and indispensable party. As illustrated in State ex rel. Associated Holding Co. v. City of St. Joseph, supra, cited by respondent, wherein the City of St. Joseph was made party respondent, city could only act through its officers, and city's officers were not made parties respondent. There was no party to the action the court could compel to do anything. Respondent points out that in State ex rel. Ludlow v. Guffey, supra, the mayor, members of the council, the building inspector and commissioner and clerk of the City of Webster Groves were all joined as parties respondent. No question of parties was raised in that case, and we do not say that all respondents joined in that case were or were not necessary parties. However, it has been noted that in the Guffey case the city council under Section 13 of the Zoning Ordinance had been delegated the administrative duty of granting or withholding special permits, and we think that, because of this, the city councilmen, to say the least, were necessary parties respondent in that case. We believe State ex rel. Bluford v. Canada, 348 Mo. 298, 153 S.W.2d 12, is analogous, although the duty of an officer or officers of a city was not involved there. In that case, a proceeding in mandamus to compel the registrar, sole respondent, to admit relator to the state university, it was not necessary to join the members of the Board of Curators as parties, although the registrar is a subordinate officer acting under the Board's lawful rules, inasmuch as it was his mandatory duty to admit relator as a student, if the law did not bar her because of her race, even in the face of a contrary ruling of the Board. In State ex rel. Hawes v. Mason, 153 Mo. 23, 54 S.W. 524, it was the ministerial duty of the city auditor, respondent, to audit the payroll and draw a warrant therefor. The City of St. Louis was not a necessary party. See also State ex rel. William R. Compton Co. v. Walter, 324 Mo. 290, 23 S.W.2d 167.

The judgment and order granting the peremptory writ of mandamus should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.